# Wytheville.

## Virginia Railway and Power Company v. J. D. Wellons.

### June 15, 1922.

1. Street Railways—*Collisions with Vehicles—Contributory Negligence—Question for Jury.*—In cases of collisions between street railway cars and vehicles in the street, contributory negligence is usually, though not always, a matter to be passed on and determined by a jury.

2. Street Railways—*Collisions with Vehicles—Contributory Negligence—Case at Bar.*—In the instant case, an action arising out of a collision between an automobile and a street car, the plaintiff and his companion, just as they were about to enter the first track of defendant's street railway, in making a turn saw the car which collided with them 175 feet away, a street crossing intervening. They then had not over thirty-five feet to go before the rear end of the automobile would be entirely clear of the second track upon which the car was approaching. Plaintiff testified that he thought that he had plenty of time to cross, and his companion said he realized no danger at that time. The evidence warranted the jury in finding that the car was greatly exceeding the speed limit.

   *Held:* That an ordinarily prudent driver might well have taken the same view of the situation, and that it could not be said that the jury was bound under the evidence to find the plaintiff guilty of contributory negligence.

3. Street Railways—*Collisions with Vehicles—Excessive Speed—Duty of Driver of Vehicle.*—In the instant case it was insisted that plaintiff and his companion observed the excessive speed of the car, which struck their vehicle, when they first saw it, and that a mathematical calculation, based upon the relative speed of the vehicles and the distance to be traversed, showed that a collision was inevitable.

   *Held:* That plaintiff could hardly have been expected to make such a calculation at the moment, or to gauge his movements with mathematical accuracy. Besides, it appeared that the estimates of plaintiff and his companion as to the speed of the car were made after the collision and not at the time they first observed the car.

4. Appeal and Error—*Two Theories Upon which Jury Might Have Found for Plaintiff—Error in Instructions as to One Theory.*—The instant case, which arose out of a collision between a street car

and an automobile, was tried in part upon the theory that even if the plaintiff was guilty of contributory negligence, he ought still to recover because the defendant had a last clear chance to avoid the accident. In other words, the jury had before it two theories upon either of which it might have found for the plaintiff.

*Held:* That since the Supreme Court of Appeals could not say which theory was adopted by the jury, an error in the instruction with respect to either would have to be regarded as prejudicial where the jury found for the plaintiff.

5. STREET RAILWAYS—*Collisions with Vehicles—Last Clear Chance—Case at Bar.*—In the instant case, a collision between a street car and an automobile, the motorman saw the automobile moving at four to six miles an hour and in the act of entering the track about forty feet ahead of him. He must have known that the automobile could not clear the track unless he checked his speed.

*Held:* That when the motorman saw the plaintiff in a position of danger from which it was perfectly apparent that he would not and could not extricate himself unless the speed of the car was arrested, and that after this situation arose the motorman, in the exercise of ordinary care, could have avoided the accident by some prompt action on his part, the theory of the last clear chance was applicable.

6. LAST CLEAR CHANCE—*Unconsciousness of Danger.*—Unconsciousness of the danger by a plaintiff may be the test in some cases, but it is not the sole test of the right to invoke the rule of the last clear chance. For example, a man negligently crossing a long railroad bridge or trestle may, before he gets across, see a train coming and be painfully conscious of his danger; and yet he will in such a case be entitled to recover if the engineer, by the exercise of ordinary care, could have seen his peril and avoided injuring him, and failed to do so.

7. LAST CLEAR CHANCE—*Unconsciousness of Danger—Case at Bar.*—In the instant case, which arose out of a collision between a street car and an automobile, if the situation was such that the motorman was obliged to know that a collision was inevitable unless he checked his own speed, then the question of plaintiff's consciousness of his danger was immaterial. His realization of the danger could not have helped his situation after his car was on the track.

8. LAST CLEAR CHANCE—*Unconsciousness of Danger—Superadded Fact—Instructions—Case at Bar.*—In the instant case, an action arising out of a collision between a street car and an automobile, defendant objected to an instruction upon the last clear chance doctrine that it failed to tell the jury that there must have been "some superadded fact or circumstance brought home to the knowledge of the defendant's agent and sufficient to put a reasonable man on his guard that the plaintiff paid no attention to his danger and would take no steps to insure his safety."

*Held:* That the essential "superadded fact or circumstance" was that the plaintiff was undoubtedly entering the track and would not get

across if the motorman maintained his speed, which was sufficiently presented by the instruction in question.

9. LAST CLEAR CHANCE—*Instructions—Absolute Duty to Avoid the Accident.*—In an action arising out of a collision between a street car and an automobile, the jury were instructed that "if they shall further believe from the evidence that after the defendant's motorman in the exercise of ordinary care saw, or ought to have seen, the plaintiff's danger in time to have avoided the accident and injury to him and failed to do so", plaintiff could recover, notwithstanding his own negligence.

*Held:* That from this language the words "ordinary care" would naturally be understood as referring not only to seeing the danger, but also to avoiding the accident.

10. LAST CLEAR CHANCE—*Collision between Street Car and Automobile— Instructions.*—In an action arising out of a collision between a street car and an automobile, the jury were instructed that although the plaintiff was guilty of contributory negligence in driving his car in front of the street car, yet if they believed "that after the defendant's motorman, in the exercise of ordinary care, saw or ought to have seen the plaintiff's danger in time to have avoided the accident and injury to him, and failed to do so, and by reason of such failure the plaintiff and his automobile received the injury complained of, they should find for the plaintiff."

*Held:* That the instruction, though not a model, as applied to the facts was a reasonably fair statement of the doctrine of the last clear chance.

11. INSTRUCTIONS—*Repetition.*—Although an instruction offered by defendant upon the last clear chance doctrine was free from serious objection and might very appropriately have been given, yet where every defense which could have been made against a recovery upon the doctrine of the last clear chance under this instruction could equally as well have been made under another given instruction, it was not error to refuse the instruction.

12. STREET RAILWAYS—*Ordinances—Duty of Motorman—Lookout and Warning.*—An ordinance provided that each motorman of a street railway car should keep a vigilant watch for all teams, carriages or persons, especially children, and should strike a bell or gong several times in quick succession on approaching within 100 feet of such team, carriage or person. It was claimed that this ordinance had no application to a vehicle crossing the street, but referred to vehicles on the tracks ahead of an approaching car.

*Held:* That the ordinance referred not only to vehicles which might be moving along the track ahead of street cars, but to all "teams, carriages, persons and children," certainly where they are, as the automobile in the instant case was, on the track at a place other than a regular street crossing.

13. APPEAL AND ERROR—*Reversal—Section 6331 of the Code of 1919.*—In the instant case the Supreme Court of Appeals was satisfied that

the vital questions of fact were fairly submitted to the jury, that the parties had a fair trial upon the merits, and that, therefore, the law had done the best it could in attaining substantial justice with respect to the controversy. Accordingly, under section 6331 of the Code of 1919, the judgment of the lower court must be sustained.

Error to a judgment of the Hustings Court, Part II, of the city of Richmond, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*M. M. McGuire* and *T. Justin Moore*, for the plaintiff in error.

*David A. Harrison, Byrd & Gwathmey* and *Fulton & Wicker*, for the defendant in error.

Kelly, P., delivered the opinion of the court.

This action arises out of a collision between an automobile owned and operated by the plaintiff, J. D. Wellons, and a street car owned and operated by the defendant, the Virginia Railway and Power Company. Wellons was slightly injured and his automobile was wrecked. The jury returned a verdict in his favor for $1,250, upon which the trial court entered the judgment under review.

The accident occurred on Broad street, in the city of Richmond, in the block between Belvidere on the west and Henry street on the east. Broad street, on which the defendant maintains and operates a double-track street car line, runs east and west. Belvidere and Henry streets run north and south. The street car was going west, and the automobile, which had

been headed east on the south side of Broad street, was crossing the tracks within the block for the purpose of making a complete turn. The west-bound track, on which the collision occurred, is slightly north of the middle of the street.

Just prior to the accident, the plaintiff came north on Belvidere street to Broad, and then east on the south side of Broad to a tank about the middle of the block, where he stopped and filled the radiator of his motor. He then started east again, intending directly to make the turn by crossing the tracks to the north. When he had proceeded east about fifteen feet from the water tank, he stopped to allow an east-bound street car and an east-bound automobile to pass him. We quote from his testimony at this point as follows:

"Then I started up my car and turned off, and I looked over in the middle of the next block across Henry street and saw a car coming west. I pulled up to the car track and thought I had plenty of time to give me the signal to turn into the car track. About the time I got to the car track, near it, or somewhere about the car track, I looked as I usually do and I saw this car coming west. It was then across Henry street, about 175 feet from me, I should judge, something like that. I pulled right on across, thinking I had plenty of time, and the time I got on the track good, got about a little over the track, it hit me. * * * It hit kind of behind the seat, in the door and behind the seat of the car. It was a little over half way of the rear of the car. I was just turning across the street going west. I didn't have the engine turned all the way west but had my wheels turned."

He testified further that at the moment of the collision the front wheels of his machine were entirely across the west-bound track; that he was running in

low gear about four miles an hour; that the street car must have been running about thirty miles an hour because otherwise it would not have struck him; and that after the collision the street car ran about 210 feet before it stopped—more than twice the distance requisite for a quick stop at a lawful rate of speed.

The plaintiff's witness, Stennette, who was riding with him, testified that he first saw the street car as the automobile was "right on" the first or southern track; that the street car was then about thirty or thirty-five feet east of Henry street, and about 170 or 175 feet east of the point of collision; that at that time he "did not realize any danger;" that he did not notice the street car again until it was within thirty or thirty-five feet of them; and that he thinks the car, basing his estimate "on driving and the speed it was coming and the way it knocked us," was about thirty or thirty-five miles an hour.

The street car, under the terms of a city ordinance in evidence, had the right of way, and it would have been the duty of the plaintiff to yield if, when he started across the tracks, the relative position of the two vehicles was such as that a reasonably prudent man would have foreseen that a collision was likely to occur unless one or the other stopped. *Va. Ry. & P. Co.* v. *Hill*, 120 Va. 397, 405, 91 S. E. 194. By another city ordinance the street car was prohibited from running at a speed of more than twelve miles an hour.

[1] There were a number of eyewitnesses to the accident, and there is considerable conflict in the testimony as to the speed of the car and the relative positions of the two vehicles when the plaintiff was approaching the track on which the accident occurred. It is not necessary at this point to say more with reference to the evidence than that the jury as the

triers of the facts were well warranted in finding them as testified to by the plaintiff and his companion. Taking these facts as true, and of course they must be so taken in this court, it is plain that the assignment of error based on the contention that the verdict should have been set aside because the plaintiff was guilty of contributory negligence must be overruled. Contributory negligence in cases of this kind is usually, though not always, a matter to be passed on and determined by a jury. *Va. Ry. & P. Co.* v. *Oliver,* ante p. 342, 112 S. E. 841, decided to-day.

[2] In the instant case the plaintiff and his companion, just as they were about to enter the first or southern track, saw the car 175 feet away with the Henry street crossing intervening. They then had, even at the perhaps too liberal estimate contended for by the defendant, not over thirty-five feet to go before the rear end of the automobile would be entirely clear of the second or west-bound track. The plaintiff testified that he thought he had plenty of time to cross, and Stennett says he realized no danger at that time. It seems to us that an ordinarily prudent driver might well have taken the same view of the situation; and at any rate we cannot say that the jury was bound under the evidence to find the plaintiff guilty of contributory negligence.

[3] It is insisted in the brief for the defendant that the plaintiff and his companion observed the excessive speed of the car, thirty or thirty-five miles an hour, when they first saw it beyond the Henry street crossing, and a mathematical calculation, based upon the relative speed of the vehicles and the distance to be traversed by each, is offered to show that a collision was inevitable if the car was running as fast as they say it was. But the plaintiff could hardly have been expected

to make such a calculation at the moment, or to gauge his movements with mathematical accuracy; and, apart from these considerations, a conclusive answer to the defendant's contention in this connection is that neither the plaintiff nor his companion said anything which fairly indicates that they based their estimate of the speed of the car upon its appearance when they first observed it 175 feet away, and thirty to fifty feet east of Henry street. It is true that they say they did not observe any reduction in the speed of the car before the collision occurred, but their estimates as to the rate of speed at which it was running are clearly shown in their testimony to have been deduced subsequently, from the fact that the car would not have caught them at all, and would not have run so far beyond the point of collision before stopping, if it had not been running at about the rate fixed in their estimate. This conclusion on their part as to the speed of the car is supported by the mathematical calculation above referred to, and it is in the retrospect rather than in advance of the accident, that there is time and opportunity to make and apply such calculations.

[4] We have dealt somewhat fully with the question of contributory negligence because considerable stress was laid upon it in the briefs; but as we understand counsel for the defendant, the position upon which they chiefly rely is that the court erred in allowing the jury to consider the doctrine of last clear chance, and also in the manner in which that doctrine was set forth in the instructions. If they are right in this position, the error is material, for the case was undoubtedly tried in part upon the theory that even if the plaintiff was guilty of contributory negligence, he ought still to recover because the defendant had a

last clear chance to avoid the accident. In other words, the jury had before it two theories upon either of which it might have found for the plaintiff, and since we cannot say which one was adopted by them, an error with respect to either would have to be regarded as prejudicial. The evidence, as already stated, was in conflict, and if the jury had believed only the witnesses for the defendant, they might well have concluded that the plaintiff was guilty of contributory negligence, and in that event could only have found for the plaintiff on the last clear chance theory. We must, therefore, seriously consider this branch of the case.

[5] In this connection the defendant's first contention is that the last clear chance doctrine could not, in any view of the evidence, apply to the case. This position is not tenable. We must now keep in mind that the jury may have believed the defendant's evidence to such an extent as to have established the contributory negligence of the plaintiff—otherwise, of course, the last clear chance theory and any error affecting it is immaterial. The motorman's testimony is unsatisfactory and contradictory within itself to some extent, but one very reasonable interpretation of it is that he saw the automobile moving at four to six miles an hour and in the act of entering the west-bound track about forty feet ahead of him. If this was true, and especially if, as the jury in all probability believed, he was exceeding the speed limit, he must have known that the automobile could not clear the track unless he checked his own speed, and yet he said at least twice in his testimony—the last time emphatically—that he did not reverse the car (the only thing he claims to have done for the purpose of slowing down or coming to a stop) until he was within

ten feet of the plaintiff. If this was, as it might fairly have been, the view adopted by the jury, then the motorman saw the plaintiff in a position of danger from which it was perfectly apparent that he would not and could not extricate himself unless the speed of the car was arrested. And if the jury believed, as it might have done under the evidence, that after this situation arose the motorman, in the exercise of ordinary care, could have avoided the accident by some prompt action on his part, the theory of the last clear chance was applicable. *Gunter* v. *Southern Ry. Co.*, 126 Va. 565, 585, 101 S. E. 885. The motorman could not have stopped the car in forty feet, but he could have perhaps materially reduced the speed, and thus allowed the automobile to clear the crossing. Both front wheels were already across when the collision occurred.

The next position taken by the defendant is that even if the doctrine of the last clear chance can be properly applied to the evidence, the court improperly instructed the jury on the subject.

Instruction No. 4, given at the instance of the plaintiff, over the defendant's objection, was as follows:

"The jury are instructed that, although they may believe from the evidence that the plaintiff was guilty of contributory negligence in driving his car in front of and in dangerous proximity to the defendant's street car, yet, if they further believe from the evidence that after the defendant's motorman, in the exercise of ordinary care, saw or ought to have seen the plaintiff's danger in time to have avoided the accident and injury to him, and failed to do so, and by reason of such failure the plaintiff and his automobile received the injury complained of, they should find for the plaintiff."

[6, 7] The first criticism urged against this instruc-
tion is that it failed to tell the jury that the plaintiff
must have appeared to the motorman to be unconscious
of his danger. It is readily manifest that this criticism
is not well founded. Unconsciousness of the danger
by a plaintiff may be the test in some cases, but it is
not the sole test of 'the right to invoke the rule of the
last clear chance. For example, a man negligently
crossing a long railroad bridge or trestle may, before
he gets across, see a train coming and be painfully
conscious of his danger; and yet he will in such a
case be entitled to recover if the engineer, by the
exercise of ordinary care, could have seen his peril and
avoided injuring him, and failed to do so. In the
instant case, if the situation was such as that the
motorman was obliged to know that a collision was
inevitable unless he checked his own speed, then the
question of the plaintiff's consciousness of his danger
is immaterial. His realization of the danger would
not have helped his situation after his car was on the
track.

[8] The second objection to the instruction under
consideration is that it failed to tell the jury that there
must have been "some superadded fact or circum-
stance brought home to the knowledge of the defend-
ant's agent and sufficient to put a reasonable man on
his guard that the plaintiff paid no attention to his
danger and would take no steps to insure his safety."

This is much the same as the objection last above
discussed and is answered by what has already been
said. The essential "superadded fact or circum-
stance" was that the plaintiff was undoubtedly entering
the track and would not get across if the motorman
maintained his speed.

In *Virginia Ry. & Power Co.* v. *Smith & Hicks,*

129 Va. 269, 274, 105 S. E. 532, 534, we said: "Counsel for the respective parties are not agreed as to whether the instruction was in fact intended to present the theory of the last clear chance. Assuming that it was, however, and assuming, further, that the plaintiff's employee negligently stopped the truck on the track, there was abundant evidence from the plaintiff's standpoint, if credited by the jury, to show that after the motorman saw, or ought to have seen, that the truck was in, or about to get in, a position where a collision was inevitable unless the street car was checked or stopped, he could have avoided the collision by the exercise of ordinary care on his part. The instruction might have been more accurately worded if intended to present the last clear chance theory, but it is substantially the one which, under somewhat kindred facts, was held in *Va. Ry. & P. Co. v. Meyer,* 117 Va. 409, 84 S. E. 742, not to incorrectly state the doctrine. The sufficiency and correctness of an instruction depend largely upon the facts and nature of the case in which it is given. It is quite conceivable that a motorman might have the right of way (as did this motorman), and yet see, or be in a position to see, that unless he slackened his speed or stopped his car, a collision with a vehicle about to cross ahead of him would be inevitable. In such a case, if the discovery of the inevitable was made, or ought to have been made, before it was too late for him to slow down or stop, he would have the last clear chance to avoid the injury, and the street car owner would be liable, regardless of the fact that the negligent conduct of the driver of the vehicle precipitated the situation, and continued up to the moment of impact. This was the essential, though not actually expressed, holding in the *Meyer Case,* and is here one

of the views which the jury might have taken of the evidence."

[9] The third objection to the instruction is that it imposes upon the defendant the absolute duty to avoid the accident, whereas its duty was only to *exercise ordinary care* to prevent the collision. The instruction can hardly be so interpreted. It tells the jury that "if they shall further believe from the evidence that after the defendant's motorman in the exercise of ordinary care saw, or ought to have seen, the plaintiff's danger in time to have avoided the accident and injury to him and failed to do so," and from this language the words "ordinary care" would naturally be understood as referring not only to seeing the danger, but also to avoiding the accident.

[10] The instructions as a whole were quite favorable to the defendant, and at least two of them practically ignored any question of the last clear chance by telling the jury unqualifiedly that if the plaintiff was guilty of contributory negligence he could not recover. Defendant's instruction No. 4 is not a model, but as applied to the facts in this case it was a reasonably fair statement of the doctrine of the last clear chance. *Va. Ry. & P. Co.* v. *Smith & Hicks, supra.*

It is insisted that the court erred in refusing to give instruction "B," offered by the defendant, as follows:

"The court instructs the jury that in order for the motorman of the street car to have had the last clear chance to avoid the accident, as mentioned in another instruction given by the court, the jury must believe from the evidence that the plaintiff negligently placed himself in a position of peril on the defendant's track, at a time and under such circumstances that he could not have extricated himself in time to avoid the accident, and that at that time, the motorman, in

the exercise of ordinary care, saw or should have seen the plaintiff's peril in time to avoid the accident, and should have realized that the plaintiff could not avoid the accident, but that thereafter there elapsed an appreciable interval of time during which he could have avoided the accident and the plaintiff could not, and that the motorman negligently failed so to do."

[11] This instruction seems to be free from serious objection and might very appropriately have been given, but we are of opinion that every defense which could have been made against a recovery upon the doctrine of the last clear chance under this instruction could equally as well have been made under instruction No. 4, to which it refers. In this view, it was not error to refuse instruction "B." *DuPont* v. *Snead*, 124 Va. 177, 187, 97 S. E. 812.

The plaintiff was allowed, over the defendant's objection, to introduce in evidence the following ordinance of the city of Richmond:

[12] "Each motorman of a street railway car shall keep a vigilant watch for all teams, carriages or persons, especially children, and shall strike a bell or gong several times in quick succession on approaching within 100 feet of such team, carriage or person. After the striking of such bell or gong any person in charge or control of such team or carriage, moving or being driven upon the tracks used by said car, shall immediately take proper steps, either by lawful increase of speed or by turning off of said tracks, to prevent obstructing or impeding the running of such car."

The objection to this ordinance as evidence is that it had no application to a vehicle crossing the street, but referred to vehicles on the tracks ahead of an approaching street car. We are unable to accept this

construction of the ordinance. It obviously refers not only to vehicles which may be moving along the track ahead of street cars, but to all "teams, carriages, persons and children," certainly where they are, as this automobile was, on the track at a place other than a regular street crossing. There was evidence tending to show that the ordinance was violated, and this being true the alleged error with respect to instruction No. 2 must be disregarded. That instruction merely told the jury that, if the ordinance was violated, such violation constituted negligence on the part of the defendant.

In *Virginia Ry. & Power Co.* v. *Smith & Hicks, supra,* we said: "The revisors, in section 6331 of the Code of 1919, in keeping with the modern trend of legislative and judicial policy, added a new clause to the old section (Code 1887, section 3449); and the statute now provides that 'no judgment or decree shall be reversed  *  *  *  for any error committed on the trial where it plainly appears from the evidence given at the trial that the parties have had a fair trial on the merits, and substantial justice has been done.' It is our purpose to vitalize this provision in its application and administration. Of course, there will always be room for doubt as to whether the right result has been reached when the evidence has been in serious conflict; but in causes triable and tried by juries 'substantial justice' in a legal sense has been attained when litigants have had one fair trial on the merits; and although instruction No. 3 was open to the criticism which we have discussed, it could not have reasonably misled the jury, and we hold that the error does not warrant reversal."

[13] In this case we are satisfied that the vital questions of fact were fairly submitted to the jury,

that the parties had a fair trial upon the merits, and that, therefore, the law has done the best it can in attaining substantial justice with respect to the controversy.

The judgment is affirmed.

*Affirmed.*