## Richmond.

# VIRGINIA RAILWAY AND POWER COMPANY v. HORTENSE TAYLOR.

### March 18, 1926.

1. STREET RAILWAYS—*Stoppage of Cars on Near Side of Intersecting Street—Permission of Director of Public Safety—Excusing Street Railway from Obeying Ordinance—Case at Bar.*—In the instant case, an action by a passenger against a street railway company for injuries to the passenger who was struck by an automobile after she had alighted from the street car, a city ordinance provided that street railways should stop their cars for the receipt and discharge of passengers only on the near side of an intersecting street. It was contended for defendant that the director of public safety had relieved the company from obedience to this ordinance at the point of the accident. But the ordinance relied upon as conferring such authority upon the director of public safety expressly excluded from its provisions street cars.

   *Held:* That the trial court did not err in excluding from the consideration of the jury all testimony with reference to the authority of the director of public safety.

2. STREET RAILWAYS—*Stoppage of Cars on Near Side of Intersecting Street—Permission of Director of Public Safety—Excusing Street Railroad from Obeying Ordinance.*—A city ordinance provided that street railways should stop their cars for the receipt and discharge of passengers on the near side of an intersecting street. While that is not to say that it would be an illegal act to stop a street car, when the occasion may arise therefor, at some other place than the near corner of intersecting streets, yet the ordinance controls under normal conditions, and means that the proper place for the receipt and discharge of passengers is the near corner of intersecting streets. It therefore follows that under ordinary conditions both passengers on street cars and others driving automobiles or other vehicles have the right to rely upon that ordinance, even though under exceptional circumstances it might be otherwise.

3. STREET RAILWAYS—*Stoppage of Cars on Near Side of Intersecting Street—Instruction Covered by Other Instructions.*—In an action by a passenger of a street railroad for injuries received, where the car had stopped on the wrong side of the street, and after the passenger had alighted,

she was struck by a passing automobile, it was not error to refuse an instruction that after one steps from a street railway car to the street for the purpose of alighting, his rights are those not of a passenger but merely those of a traveler upon the highway, where the rights of the defendant to rely upon this rule and its other defenses were fully safeguarded by other instructions given to the jury.

4. Street Railways—*Stoppage of Car on the Near Side of Intersecting Streets—Alighting—Care to be Exercised by Street Railway—Case at Bar.*—In the instant case, an action by a passenger against a street railway company for injuries received when she was struck by an automobile after alighting from the car which had stopped on the wrong side of the street, it was shown by the testimony of the conductor on the car that he saw the automobile pass the rear end of the street car and knew before the passenger alighted that the passenger was in peril because the automobile did not stop.

   *Held:* That the evidence justified an instruction for plaintiff that the company owed the passenger a reasonable opportunity to reach a place of safety while exercising ordinary care.

5. Street Railways—*Injury to Passenger after Alighting—Question Whether Passenger had Reached a Reasonably Safe Place for the Jury—Case at Bar.*—The instant case was an action by a passenger who was struck by a passing automobile after alighting from a car which had stopped on the wrong side of the street. The passenger testified that "it was all done in a second," and the motorman and the driver could not say that she had taken more than a step before she was struck. There was some conflict as to these details but the instructions as a whole fairly presented the conflicting theories of the parties.

   *Held:* That the plaintiff was entitled to have the jury told, under this evidence, that they had the right, the duty and the responsibility of determining from the evidence whether she was still a passenger when injured, or had been discharged and permitted to reach a place on the street which was reasonably safe for her and where she was subjected only to the ordinary dangers of pedestrians on the street.

6. Street Railways—*Stoppage of Cars at near side of an Intersecting Street—Proximate Cause—Case at Bar.*—In the instant case, plaintiff, a passenger on defendant's street car, was struck by a passing automobile after she had alighted from the car which had stopped on the wrong side of the street. Defendant contended that even if the stoppage of the car on the wrong side of the street was negligence, it was not the proximate cause of plaintiff's injuries. It appeared from the evidence that the accident occurred immediately after plaintiff alighted from the car, she not having taken more than one step after alighting.

   *Held:* That it was fair to submit to the jury the question of whether

the company's negligence was the proximate cause of the injuries of plaintiff.

7. STREET RAILWAYS—*Stoppage of Car on the Near Side of the Intersecting Street—Safe Place to Alight—Question for the Jury—Case at Bar.*—In the instant case, the street car of defendant upon which the plaintiff was riding stopped on the wrong side of a street intersection, and after plaintiff alighted she was struck by a passing automobile; the driver claimed that the reason that he drove his automobile by the street car was that he knew of the city ordinance providing, that the proper place to stop the street car for the discharge of passengers was on the near side of the street and that when he saw that the street car was crossing the street, he supposed that there was no passenger to be discharged at that intersection.

*Held:* That it was fair to submit to the jury the question as to whether the company had in fact afforded the plaintiff, as its passenger, a reasonably safe place in which to alight.   Unless the company has done this it was chargeable with negligence.

8. NEW TRIAL—*Verdict Contrary to the Evidence—Section 6331 of the Code of 1919.*—In the instant case, an action by a passenger against a street car company for injuries, there was some conflict in the testimony on the different points of the case and the case was a close one, but the jury had the right to credit the testimony which tended to support their verdict, and the verdict should not be disturbed unless some substantial right of the defendant had been violated. It was manifestly a case for the application of the rule embodied in. the Code of 1919, section 6331.

9. APPEAL AND ERROR—*Reversal where Parties have had One Fair Trial—Section 6331 of the Code of 1919.*—The revisors, in section 6331 of the Code of 1919, in keeping with the modern trend of legislative and: judicial policy, added a new clause to the old section (Code 1887, section 3449); and the statute now provides that "no judgment or decree shall be reversed for any error committed on the trial where it plainly appears from the evidence given at the trial that the parties have had a fair trial on the merits, and substantial justice has been done."   It is the purpose of the Supreme Court of Appeals to vitalize this provision in its application and its administration.

Error to a judgment of the Hustings Court, Part 2, of the city of Richmond, in an action of trespass on the case.   Judgment for plaintiff.   Defendant assigns. error.

*Affirmed.*

The opinion states the case.

*T. Justin Moore, Murray M. McGuire*, and *Norman L. Flippin*, for the plaintiff.

*Morton L. Wallerstein, Thos. I. Talley*, and *Harold S. Bloomberg*, for the defendant in error.

Prentis, P., delivered the opinion of the court.

Hortense Taylor has recovered a small judgment against the Virginia Railway and Power Company in an action for personal injury. The plaintiff, a passenger on one of the street cars of the company, shortly after five o'clock in the afternoon of July 15, 1921, was struck by an automobile driven by O. A. Ford just as, or after, she alighted from the street car, going west, at the far corner of 12th and Marshall streets, in the city of Richmond. There is a conflict in the evidence as to whether she was struck immediately upon stepping to the street, or had time to take two or three steps before she was struck. She sued both the street railway company and Ford, the driver of the automobile, but the jury found a verdict in favor of Ford, upon which there was a judgment which has become final, so that he is no longer interested in this case.

The grounds of negligence relied on by the plaintiff against the company are, (1) failure to furnish a safe place for her to alight from the street car; (2) failure to warn the plaintiff of the approaching automobile; and (3) failure to obey the city ordinances requiring the defendant to stop for the receipt and discharge of passengers on the near side of intersecting streets.

a. The first assignment of error is because the trial court excluded from the consideration of the jury all testimony with reference to the authority of the director of public safety of the city of Richmond to control

street traffic, in excluding evidence of the director relative to certain letters written by him to the company, authorizing it to stop its cars on the western side of 12th street; and the same question is raised by the court's refusing to give instruction "H," which was offered by the company, as well as in giving instruction 4 for the plaintiff.

[1, 2] The court bases this ruling upon section sixteen, chapter thirty-eight, of the Richmond City Code, 1910, as amended. That section reads: "That street railway companies operating lines of railway on the streets of the city of Richmond be and they are hereby required to stop their cars for the receipt and discharge of passengers only on the near side of intersecting streets." Then follows a proviso, making certain exceptions, and subjecting the company to a fine for its violation.

It is contended that because the director of public safety undertook to relieve the company from obedience to this ordinance at that point this action of the director of public safety and the erection of a sign to that effect excuses the company from obeying the ordinance. The only authority conferred upon the director of public safety, which is relied on as to this matter, is section three of the ordinance regulating traffic on the streets of Richmond, which reads: "The department of public safety shall have all powers, authorities and duties in relation to the management and direction of all vehicular and pedestrian traffic and to the parking of vehicles in the interest of public safety, comfort and convenience. Persons using the sidewalks and streets of the city shall comply at all times and places with any direction by voice, hand, whistle, sign or signal from any member of the police force as to starting, stopping, slowing, parking, approaching or departing from any place; also as to the manner of taking up or setting

down passengers and in loading and unloading vehicles. The department of public safety shall have authority to place upon the sidewalks and streets of the city such signs, signals and other devices for handling traffic as it may deem necessary."

Paragraph six of section one of the same ordinance provides: "The term vehicle shall apply to a horse and any conveyance except a baby carriage or a street car."

It seems to us that it is only necessary to recite these ordinances to make it plain that the director of public safety exceeded his authority when he authorized the company to disregard the ordinance, section sixteen, above quoted fixing the near side of intersecting streets as the proper place for the receipt and discharge of street car passengers. It could only have misled the jury to have admitted the evidence, and it would have been error to instruct them otherwise. This is not to say that we believe it to be an illegal act to stop a street car, when the occasion may arise therefor, at some other place than the near corner of intersecting streets, but the ordinance controls under normal conditions, and means that the proper place for the receipt and discharge of passengers is the near corner of intersecting streets. · It therefore follows that under ordinary conditions both passengers on street cars and others driving automobiles or other vehicles have the right to rely upon that ordinance, even though under exceptional circumstances it might be otherwise. So that the first assignment of error affords no ground for reversal.

[3] b. There is an exception to the refusal to give instruction "G" offered by the defendant, and to the giving of plaintiff's instruction No. 5.

Instruction "G" reads: "The court instructs the jury that one who steps from a street railway car to the street for the purpose of alighting is not upon the

premises of the railway company after alighting, but upon a public place, where he or she has only the same rights as every other occupier of the public streets, over which the railway company has no control. Thereafter, after stepping safely to the street and being given a reasonable opportunity to occupy or to reach a place of safety, the rights of such person are then only those of a traveler upon the highway, and not those of a passenger."

This instruction would be entirely appropriate in most cases of injuries to those who have alighted from street cars, but was certainly unnecessary in this case, because the right of the defendant company to rely upon this rule and its other defenses were fully safeguarded by several other instructions which were given to the jury. For instance, they were told that the defendant company was not an insurer of the safety of its passengers, and that there was no presumption of negligence arising out of the fact that the plaintiff was injured shortly after alighting from the car; that the motorman had the right to assume that the plaintiff would exercise ordinary care for her own safety, and that persons driving vehicles on the street would also exercise ordinary care and comply with all ordinances and regulations relative to speed, manner of driving and stopping such vehicles; if they believed from the evidence that "the plaintiff safely alighted from the front platform of the defendant company's car to the street before the accident here complained of occurred, and that she was given a reasonable opportunity to occupy or to reach a place of safety, the relationship of carrier and passenger thereupon ceased and the defendant company owed the plaintiff no further duty in the premises;" and that, if by exercising ordinary care the plaintiff could have remained standing in safety at the

point where she alighted, or by the exercise of similar care before or in the act of alighting she could have avoided the accident, or if the failure to do any of these things caused or efficiently contributed to the accident complained of, she was guilty of contributory negligence, and the jury must find for the defendant company.

[4] The instruction No. 5, which was given for the plaintiff, is in the usual form in cases of injury to passengers. It instructed the jury that the company owed to the passenger the duty to carry safely those whom they take into their cars, as far as human care and foresight will go, that is to the utmost practicable care and diligence of very cautious persons, and that the implied contract to carry safely includes the care of giving the passengers a reasonable opportunity to reach a place of safety while exercising ordinary care; and that if the defendant company violated this duty this constituted negligence. There is ample evidence to justify this instruction. It is shown by the testimony of the conductor on the car that he saw the automobile pass the rear of the street car and knew before she alighted that the passenger was in peril because the automobile driver didn't stop.

[5] A passenger testifying used this expression: "It was all done inside of a second from the time I saw the automobile until it struck the lady;" and the motorman could not say that she took more than one step; while the driver of the automobile said that he couldn't tell to save his life whether she had taken any other step than that she took to the ground from the street car. There was some conflict as to these details, but the instructions when read together show that the attorneys who tried the case, as well as the court, recognized these conflicts, and the instructions as a whole fairly present

the conflicting theories of the parties. It is apparent then that the plaintiff was entitled to have the jury told, under this evidence, that they had the right, the duty and the responsibility of determining from the evidence whether she was still a passenger when injured, or had been discharged and permitted to reach a place on the street which was reasonably safe for her and where she was subjected only to the ordinary dangers of pedestrians on the street.

[6] c. The third assignment is based upon the contention that the negligence of the company, even if conceded, was not the proximate cause of the plaintiff's injury. This is, of course, a very difficult question, and the efforts of judges to elucidate it frequently add to the practical difficulty of applying such expressions to concrete cases. One answer to this assignment of error is, the instruction No. 9, which was given at the instance of the company, clearly submits this question of proximate cause to the jury, and this was proper under the evidence.

One of the latest and most interesting cases in this court on this question of proximate cause is *Hines* v. *Garrett*, 131 Va. 125, 108 S. E. 690. There a young woman was carried by rail beyond her station, and was required to alight just before dark at a place infested by tramps and robbers, and was there assaulted. This court held that the putting off of this passenger at the wrong place was the proximate cause of the injury, saying, at page 140 (108 S. E. 695): "We do not wish to be understood as questioning the general proposition that no responsibility for a wrong attaches whenever an independent act of a third person intervenes between the negligence complained of and the injury. But as pointed out by Judge Keith, in *Connell* v. *C. & O.*

*Ry. Co.*, 93 Va. 57, 24 S. E. 467, 32 L. R. A. 792, 57 Am.
St. Rep. 786, this proposition does not apply where the
very negligence alleged consists of exposing the injured
party to the act causing the injury. It is perfectly
well settled and will not be seriously denied that wher-
ever a carrier has reason to anticipate the danger of an
assault upon one of its passengers, it rests under the
duty of protecting such passenger against the same.
The Virginia cases relied upon by the defendant do not
sustain its position. Neither in the case of *Connell* v.
*C. & O. Ry. Co.*, *supra*, nor in *Fowlkes* v. *Southern Ry.
Co.*, 96 Va. 742, 32 S. E. 464, could the defendant have
been reasonably expected to anticipate the conse-
quences for which the plaintiff sought to recover.
Those cases applied the same rule which we have
applied in this case, and held that the proximate result
of negligence is a result which ought to have been fore-
seen in the light of attending circumstances."

[7] This case differs from the numerous cases in which
street railway companies have been properly relieved
of liability for injury to persons who have alighted
from their cars and have been struck by other vehicles
using the street, because in none of those cases, so far
as we have been able to examine them, had the passen-
ger been put off at the wrong place, while that is true
here. The driver of the automobile which struck this
plaintiff claimed that the reason he drove his auto-
mobile by the street car was because he knew of the
ordinance and that the proper place to stop the street
car for the discharge of passengers was on the near side
of the street, and that when he saw that the street car
was crossing the street, he supposed that there were no
passengers to be discharged at that intersection, and
that the street car would not stop there, and therefore
he thought that he was only exercising his rights in

passing it, having been so misled and was surprised by the sudden stopping of the car on the far side of the street.  Therefore, in this case, it was fair to submit to the jury the question as to whether the company had in fact afforded the plaintiff, as its passenger, a reasonably safe place in which to alight.  Unless the company has done this it is chargeable with negligence. This, as indicated, distinguishes this case from those relied on, with which we are in accord, which so properly relieve the carrier when the passenger has been afforded such an opportunity.

[8, 9] d.  It is alleged that the court erred in refusing to set aside the verdict.  This, in effect, is to say that under this testimony, as a matter of law, the plaintiff cannot recover.  While the case, upon the facts, is very close, a careful reading of the instructions shows that every question raised before us was in the minds of the attorneys and raised at the time of the trial.  Upon all of the difficult points there was some conflict in the testimony.  The jury had a right to credit the testimony which tends to support the verdict, and it should not be disturbed unless some substantial right of the defendant has been violated.  It is manifestly a case in which we should apply the rule embodied in Code, section 6331, and we repeat what has been said in *Va. Ry. & P. Co.* v. *Smith & Hicks*, 129 Va. 269, 105 S. E. 532, and in *Va. Ry. & P. Co.* v. *Wellons*, 133 Va. 350, 112 S. E. 843: "The revisors, in section 6331 of the Code of 1919, in keeping with the modern trend of legislative and judicial policy, added a new clause to the old section (Code 1887, section 3449); and the statute now provides that 'no judgment or decree shall be reversed   *   *   *   for any error committed on the trial where it plainly appears from the evidence given at the trial that the parties have had a fair trial on the

merits, and substantial justice has been done.' It is our purpose to vitalize this provision in its application and administration. Of course, there will always be room for doubt as to whether the right result has been reached when the evidence has been in serious conflict; but in causes triable and tried by juries 'substantial justice' in a legal sense has been attained when litigants have had one fair trial on the merits."

*Affirmed.*