MAYSEL TWYMAN *v.* MONONGAHELA WEST PENN PUBLIC SERVICE COMPANY

(No. 8480)

Submitted February 10, 1937. Decided March 9, 1937.

*James A. Meredith* and *Ernest R. Bell*, for plaintiff in error.

*Joseph B. Hearst* and *Victor H. Shaw*, for defendant in error.

FOX, JUDGE:

On the evening of January 19, 1935, at about eight fifteen o'clock, the plaintiff, Maysel Twyman, sustained injuries when struck by an automobile operated by one Troy Mullanex, immediately after alighting from a street car operated by the defendant, Monongahela West Penn Public Service Company, on a public street in the City of Fairmont. The plaintiff contends that negligence in the operation of the street car was the proximate cause of her injuries. In this action, instituted by her to recover for such injuries, she obtained a verdict against the defendant, which the court below refused to disturb, and on which it entered judgment over the objection of the defendant, to which action it prosecutes this writ of error.

The defendant operates a street railway system in the City of Fairmont, and particularly on Morgantown Avenue in the said city, which is a part of the State Highway Route No. 73. The accident occurred at the intersection of said avenue and Mill Street. The operation

of both the street car and the automobile involved in the accident is subject to state statute, Code, 17-8-11, and certain ordinances of the City of Fairmont, being sections 17, 31, 63, 69 and 98 of Ordinance No. 68 of said city. The state statute refers to the operation of motor vehicles in passing street cars. Section 17 of the ordinance, above referred to, regulates the stopping of street cars on streets of the city; section 31 covers the operation of any vehicle approaching a street car which has stopped or is about to stop; section 63 covers the right of pedestrians to cross the streets at cross-walks at street intersections; section 69 defines the duties of pedestrians alighting from street cars; and section 98 covers the requirement that motor vehicles shall be equipped with adequate brakes. The state statute, and sections 31, 63, 69 and 98 of the City Ordinance No. 68 are relied upon by the defendant. Ordinance No. 17 is introduced and relied upon by the plaintiff. The statute and ordinances referred to, it is contended, have some relation to the question of liability in this case.

The width of Morgantown Avenue at the point of the accident is 33.9 feet, and the width of Mill Street at the same point is 22 feet. The street car line is located at or near the center of the avenue and the distance from the car line to the curb on the side where the accident occurred is 14.4 feet. The street car extended beyond the car track approximately one and one-half feet, and the distance from the car itself to the curb was approximately 13 feet. The automobile which struck the plaintiff was of a width of between 56 and 59 inches. The street car involved in the accident was approximately 40 feet in length and of a weight of 29,700 pounds, and was operated by one employee who acted as motorman and also collected fares, and whose duty, it is contended, was to look after the welfare of passengers.

On the evening of the accident, the plaintiff boarded the street car at what is known as the High Level Bridge in Fairmont, and shortly thereafter, she was joined by her sister, Susie Twyman, and a friend, Hazel Osborne. These three ladies seated themselves at or near the mid-

dle and on the right-hand side of the car. W. C. Hudgins and Oat Gibson were also passengers on the car at the time of the accident. The motorman occupied a position in the front of the car. After passing along certain streets of the city, the car was operated on Morgantown Avenue, and when approaching the vicinity of Mill Street, the plaintiff rang the bell indicating her desire to leave the car at that point. The car stopped in the vicinity of the Mill Street intersection—just where is a matter of dispute—and the plaintiff left the car at the front of the same and on the right-hand side, attempted to cross the street to the curb at or near said intersection, and in so doing, was struck by the automobile driven by Mullanex and injured.

The plaintiff contends (1) that the car did not stop at the intersection of Morgantown Avenue and Mill Street, the point where, by custom and by requirement of the ordinance of the city, it should have stopped; (2) that the car stopped suddenly or instantly under such conditions as misled the driver of the automobile which caused the direct injury to plaintiff; (3) that the motorman in charge of the street car was negligent in failing to warn her of the danger to which she was subjected in crossing the street at that particular point; and that the proximate cause of her injury was the negligent acts of the defendant, enumerated above. On the other hand, the defendant contends (1) that the street car was stopped in the regular place, at the intersection of Morgantown Avenue and Mill Street, both in compliance with the custom and rules of the company and with the ordinance of the city; (2) that the injury to the plaintiff was the result of the negligent acts of Mullanex, who operated the automobile which struck the plaintiff, and that the negligence of Mullanex relieved the defendant of liability; and (3) that the negligence of the plaintiff in leaving the car, and in attempting to cross the street to the curb, without taking precautions to ascertain whether or not an automobile was approaching, was such as to bar recovery on her part against the defendant.

These questions being presented, it is apparent that there must be a consideration of the facts bearing upon three points: (1) where and in what manner was the street car stopped; (2) the conduct of Mullanex in respect of the operation of the automobile driven by him; and (3) the conduct of the plaintiff when she alighted from the street car and attempted to cross the street to the curb. These questions will be taken up in the order mentioned.

There is serious conflict in the testimony as to where the street car stopped. Four witnesses, introduced by the plaintiff, say that the car stopped on what is called the far side of Mill Street, at or near a light post, and approximately seven feet beyond the far side of Mill Street from the point where it is contended the car should have stopped; two witnesses, introduced by the plaintiff, testify that the car stopped at some point on Morgantown Avenue covered by the intersection of Mill Street; one witness saying it stopped about half-way across the street, and another, that it stopped about two-thirds the distance across said street; four witnesses, introduced by the defendant, testify that the street car stopped at the intersection of Morgantown Avenue and Mill Street at the usual stopping place, or what is termed in the evidence the near side. Those who testify for the plaintiff are Troy Mullanex and his wife, Margaret Mullanex, Ralph E. Perkins, brother-in-law of the plaintiff, Susie Twyman, her sister, Hazel Osborne and Oat Gibson. Those who testify for the defendant are Homer C. Blosser, its motorman and employee, W. C. Hudgins, and two young ladies, Lena Anselene and Rita Anselene. The testimony shows that the plaintiff was found, after the accident, near the curb on the far side of Mill Street, and one witness testifies that she was propelled or dragged across Mill Street, from which the defendant argues that she must have been struck by the automobile at some point between where the plaintiff alighted from the street car and the place where she was found after the accident, and it contends, vigorously, that it could not have been possible that the plaintiff could have been

struck at any point beyond the far intersection of Morgantown Avenue and Mill Street.

Of the witnesses who testify for the plaintiff, as to where the car stopped, Mullanex and his wife were in the automobile which struck the plaintiff; Susie Twyman and Hazel Osborne were on the street car with the plaintiff, and alighted therefrom shortly after the accident; Oat Gibson was a passenger on the street car, and Ralph Perkins, who did not see the accident but arrived immediately thereafter, testifies as to the place where the car stopped. Of the witnesses who testify for the defendant, Homer C. Blosser was the motorman; Hudgins was a passenger on the car, seated near the front thereof; and the two Anselene girls were standing on Morgantown Avenue, near the intersection of the avenue and Mill Street, where the car ordinarily stopped, and saw the plaintiff alight from the street car and come in the direction of the curb, saw Mullanex' automobile approaching, realized the danger to the plaintiff, and one of them made a move to assist her in getting out of the way of the automobile, but was detained by the other. On the question of the manner in which the car was stopped, the evidence is likewise in conflict. Some witnesses say that the car stopped in the usual manner, and by slowing down gradually, while others say that it stopped instantly or suddenly. In this connection, the weight of the street car and the probability that it could have been stopped suddenly or instantly should be considered.

Closely connected with the stopping of the car is the conduct of Mullanex, a consideration of which is required by reason of the fact that it is contended by the defendant that the alleged negligence of Mullanex is more closely related to the injuries sustained by the plaintiff than any act of the defendant. Mullanex was driving an old model car with inadequate brakes. He contends that the sudden stopping of the car, at a place other than the regular stop, misled him as to what he was privileged to do, and says that his failure to stop his automobile was the result of his belief that the street car did not intend to stop at that point; but in view of the fact that

in his evidence he stated: "I didn't know what stop they did make regular", and the further fact that the distance involved between the point where it is contended the car should have stopped and the far side of Mill Street, where plaintiff's witnesses say the car did stop, is less than 30 feet at the most, it is difficult to see how Mullanex could have been seriously misled, and it is quite clear that Mullanex was not exercising that care and caution which he was required to exercise, both under the statute law of the state and the ordinances of the City of Fairmont, in respect to the manner of operating his car and the providing of adequate brakes for the same.

The acts and conduct of the plaintiff are not a matter of dispute on any material point. She was seated near the center of the car on the right-hand side, and shortly before the accident, pressed a button which rang a bell, preparatory to leaving the car. She, her sister and her friend attempted to leave the car at the same stopping place. At some time after the stop signal was given, they arose from their seats and moved to the front of the car, the plaintiff leading. There is some conflict as to whether the plaintiff arose from her seat before or after the car stopped. When the car stopped, the motorman used a lever which opened the door of the car and at the same time, let down the step from the car to the street, and immediately the plaintiff, in a hurried manner, without looking in either direction, left the street car and started across the intervening space between the car and the curb, and was struck within three or four feet of the curb, making several steps between the street car and the place where she was struck. She, herself, admits that she did not look for approaching automobiles, but stated that she thought she was being put off at the right place, assumed that automobiles approaching would stop, and therefore did not look. By reason of her injuries which rendered her unconscious, she does not remember anything which occurred after leaving the car.

On the issues of fact thus presented, the jury returned a verdict for the plaintiff. It must be apparent that the

jury, in returning its verdict, found that the street car did not stop at its regular stopping place, and that such failure to stop was the proximate cause of the injury to the plaintiff; or that the failure to stop the car at the proper place, and the concurrent acts of Mullanex, amounting to negligence, concurred with the negligent act of the defendant and resulted in the injury to the plaintiff. Whatever may have been the methods by which the jury arrived at its verdict, this court will not, under well settled principles of law, disturb the jury's finding; and we must therefore approach the decision of this case on the assumption that the street car, operated by the defendant, did not stop at the usual and customary place at the near corner of Morgantown Avenue and Mill Street. Just whether it did stop at one-half or two-thirds the distance across Mill Street or at the point beyond Mill Street, is not material, unless in connection with the alleged concurrent negligence of Mullanex. Nor can the defendant escape liability, as a matter of law, by reason of the alleged negligence of Mullanex, if the negligent acts of the defendant and Mullanex were so closely related that either could be said to be the proximate cause of the plaintiff's injury. This more or less disposes of the questions raised by objection of the defendant to certain instructions given in the trial of the case, in which the jury was instructed that to relieve the defendant on account of the alleged negligence of Mullanex, they must believe that such negligence was the sole proximate cause of plaintiff's injury. We do not think the court erred in giving these instructions in the form in which they were given, especially in the light of other instructions given in the case.

Assuming, in view of the verdict of the jury, that the defendant was negligent in the matter of stopping its car, and that the alleged concurrent negligence of Mullanex did not, by reason of its close relation to that of the defendant, wholly excuse the original negligence, the question still remains whether the act and conduct of the plaintiff was such as to convict her of negligence barring recovery on her part. If the negligence of the de-

fendant, or such negligence coupled with that of Mullanex, was the proximate cause of the injury to the plaintiff, she can recover; if, after the negligence of the defendant ceased to operate, the negligence of the plaintiff intervened, and such negligence was the proximate cause of the injury, she cannot recover.

Any attempt to define "proximate cause" is difficult, but it has been defined in simple language as follows: "The proximate cause of an injury is that cause which, in natural and continuous sequence, unbroken by any sufficient intervening cause, produces the injury, and without which the injury would not have occurred". 22 R. C. L. 110. Applying this definition to this case, in order to make the defendant liable, it must be held that everything which occurred after its car was stopped, including the alleged violation of law by Mullanex in operating his automobile without adequate brakes, and in failing to stop when the street car stopped or was about to stop, and including also the lack of care and caution shown by the plaintiff in rapidly alighting from the street car without looking for the approach of the automobile which caused her injury, was the natural and continuous sequence of the defendant's original negligence. As stated above, the alleged negligence of the defendant and Mullanex are so closely related as to make it probable that they were concurrent in the sense that both were liable to the plaintiff, had there been no act of negligence on her part; but this case is different. Admitting that both the defendant and Mullanex were negligent, would their negligent act have resulted in the injury of the plaintiff, had her negligence not intervened? We think not. The plaintiff was in full control of her actions; she could have taken her own time to alight from the car; she was young, alert and in full possession of her faculties; by the slightest degree of care she could have observed the approach of the automobile which caused her injury, and could have waited until it passed before proceeding across the street to the curb; she was in safety when she stepped from the car, and was not struck until she had almost reached the street curb; but

for her failure to look and act on what she could have seen, her injury would not have resulted. On the other hand, the defendant had no control over either the plaintiff or Mullanex, or the street in which it was operating its car, it could not reasonably have been expected to know that Mullanex, or any other automobile driver, would violate the law in operating his vehicle without adequate brakes, or that he would fail to stop when the street car stopped, or was about to stop; nor could it be expected to know or contemplate that the plaintiff would fail to take reasonable precautions to protect herself. It had the right to assume that the laws and ordinances would be observed, and that the plaintiff would exercise the usual means of self-preservation instinctively resorted to by all thinking beings in the natural course of events. The plaintiff does not contend that she took any precautions to protect herself; she admits that she did not. She merely says that she thought the car was being stopped at the right place; not only did she not look, but she alighted from the car in a hasty manner—one witness says she jumped from the car—and, unfortunately for her, violated every rule of caution and safety. It must be held that the negligence of the plaintiff was the proximate cause of her injury and such negligence bars her recovery in this case.

In the examination of authorities bearing on this case, an effort has been made to confine such examination to cases where the negligence alleged grew out of the stopping of a street car at some point other than the regular stopping place, as required either by law, custom, or ordinance. There is no distinction in the application of the rules governing negligence barring recovery, as to whether the stopping at a particular place is required by the common law, a custom or rule of the company, or a city ordinance. *Miner* v. *MacNamara*, 81 Conn. 690, 72 A. 138, 21 L. R. A. (N. S.) 477. In either case, the negligence complained of on the part of the defendant must be the proximate cause of the injury. *Jones* v. *Virginian Ry.* Co., 115 W. Va. 665, 177 S. E. 621. Contention is made · by the defendant that in this case, the ordinance of the

City of Fairmont, introduced in evidence by the plaintiff, was not properly pleaded, and that it could not be considered. This contention is not tenable. The court below had a wide discretion in permitting amendments to the declaration to be made (Code 56-4-24). Its action in allowing the amendment during the course of the trial was not error. Certainly the allowance of the amendment made the introduction of the ordinance as evidence proper.

There is much authority for the proposition that "one who has alighted from a street car and is in safety upon the highway is no longer a passenger, but is thenceforth a traveler upon the highway, and subject to all the duties and obligations imposed upon such traveler, * * * ". 4 R. C. L. 1047. The rule thus announced is supported by *Oddy* v. *Street Ry. Co.*, 178 Mass. 341, 59 S. E. 1026, 86 Am. St. Rep. 482; *Powers* v. *Connecticut Co.*, 82 Conn. 665, 74 A. 931, 26 L. R. A. (N. S.) 405; *Chesley* v. *Waterloo C. R. & N. R. Co.*, 188 Iowa 1004, 176 N. W. 961, 12 A. L. R. 1366; *Jacobson* v. *Omaha & Council Bluff Street Ry. Co.*, 109 Neb. 356, 191 N. W. 327, 31 A. L. R. 563; *Mahoning and Shenango Ry. & Light Co.* v. *Leedy*, 104 Ohio St. 487, 136 N. E. 198; *St. John* v. *Connecticut Co.*, 103 Conn. 641, 131 A. 396; *Lindgren* v. *Pudget Sound International Ry. & Power Co.*, 142 Wash. 546, 253 P. 791; *Cleveland Ry. Co.* v. *Sebesta*, 121 Ohio St. 26,166 N. E. 898; *Downs* v. *Northern States Power Co.*, 200 Wis. 401, 228 N. W. 471; *Lacks* v. *Wells*, 329 Mo. 327, 44 S. W. (2d) 154; *MacLearn* v. *Iowa Southern Utilities Co.*, 212 Iowa 555, 234 N. W. 851; *Miller* v. *Kansas City Public Service Co.*, 136 Kan. 288, 15 P. (2d) 453; *Trimboli* v. *Public Service Co-ordinated Transport*, 111 N. J. Law 481; 168 A. 572; *Tinnell* v. *Louisville Ry. Co.*, 250 Ky. 245, 62 S. W. (2d) 467; *Wittkower* v. *Dallas Ry. & Terminal Co.*, (Tex. Civ. App.) 73 S. W. (2d) 867; *Smuzynski* v. *East St. Louis Ry. Co.*, (Mo. App.) 93 S. W. (2d) 1058. It would serve no good purpose to discuss at length the principles upon which the cases above cited were decided. Suffice it to say, the reasoning is that a street railway company has no control over the

street or highway along which it operates its cars; that it has not control over the actions of persons who may travel over such street or highway, and, likewise, it has no control over a passenger after he alights; and that after the passenger safely alights, it becomes his duty to exercise care to protect himself from injury from agencies over which the street railway company has no control. The cases hold that the degree of diligence required on the part of a plaintiff is the same whether a street car is stopped at the regular stopping place or at some unusual place, for example, in the middle of a block; and in either case, a passenger, being in control of his own movements, and beyond the control of the carrier, must take reasonable and necessary steps for his own protection.

There are cases which hold contrary to the rule announced in the cases above cited. These cases rest, for the most part, on what the court considered the duty of the carrier to warn the passenger of some danger. *Wood* v. *North Carolina Public Service Co.,* 174 N. C. 697, 94 S. E. 459, 1 A. L. R. 942; *Loggins* v. *Southern Public Utilities Co.,* 181 N. C. 221, 106 S. E. 822; *Gulfport Traction Co.* v. *Raymond,* 157 Miss. 439, 128 So. 327; *Virginia Ry. & Power Co.* v. *Taylor,* 144 Va. 496, 132 S. E. 334, 335. All of these cases are based on evidence tending to show failure on the part of those who operated the street car to advise a passenger of some imminent danger, and particularly, in the case last cited, it was developed that the conductor of the street car knew of the danger to which the passenger was exposed and failed to give warning of such danger. In the case of *Louisville Ry. Co.* v. *Kennedy,* 162 Ky. 560, 172 S. W. 970, Ann. Cas. 1916 E, 996, the injury occurred as a result of the plaintiff being struck by an agency of the carrier, where it was claimed that the plaintiff was guilty of contributory negligence in stepping in front of a passing street car. The rule with respect to the necessity of warning the passenger, apparently followed in the cases last above cited, especially where it is not clearly shown that the carrier had notice of the danger to which the pas-

senger was exposed, is questioned in *Oddy* v. *Street Ry. Co., supra; St. John* v. *Connecticut Co., supra; Lindgren* v. *Pudget Sound International Ry. Co., supra; Downs* v. *Northern State Power Co., supra.*

But even recognizing the conflict in the authorities on the liability of the carrier with respect to warnings to passengers, the duty to warn must be based upon knowledge on the part of the carrier or its employee of the danger imminent. In the cases where lack of warning has been held to be negligent, the carrier either knew of the danger or should have known, from the circumstances of the case presented. In the case under consideration, there is no showing that the motorman on the defendant's car had any knowledge of the approach of the automobile driven by Mullanex or the approach of any other automobile. The only testimony on this point is that the motorman, about the time when he was attempting to stop his car, looked back to see if automobiles were approaching, and he states that he did not see any such vehicles. Under these circumstances, there was nothing on which he could base a warning to the plaintiff. We are justified in assuming that following this "glance backward," the motorman's attention was directed toward stopping his car and opening the door to permit passengers to alight, and the time consumed in performing this duty might well have been a sufficient amount to permit Mullanex to drive up from behind the car and strike the plaintiff, especially after she had taken the time to leave the car and almost reach the street curb before she was struck.

The defendant complains of instructions given by the court, at the instance of the plaintiff, which would require the defendant to exercise the highest character of care to avoid injury, the complaint being that the qualifying phrase "consistent with the practical operation of its street cars" was not embodied therein. This omission was not material. In every instruction on the different degrees of care required, the necessary operation of the agency employed is implied. This court has looked with favor on such qualifying phrase. *Venable* v. *Gulf Taxi*

*Line,* 105 W. Va. 156, 141 S. E. 622, but we have not been cited to any case where its omission has been held error.

The judgment of the circuit court of Marion County is reversed and the case remanded for a new trial.

*Judgment reversed; verdict set aside; new trial awarded.*