# CHARLESTON.

## CALVIN THOMAS *v.* ALLEN JONES

### (No. 6051)

Submitted January 17, 1928.   Decided January 24, 1928.

1. APPEAL AND ERROR—TRIAL—*In Setting Aside Non-suit and Reinstating Case, Trial Court May Consider Evidence and His Rulings; Trial Court's Action in Setting Aside Non-suit and Reinstating Case Will Not be Disturbed on Appeal, Except on Showing of Abuse of Discretion (Code, c. 127, § 11).*

In setting aside a non-suit and reinstating the case upon the trial docket under chap. 127, sec. 11, Code, the trial court may consider the evidence given up to the time of the non-suit, and his rulings in the case, for ascertaining good cause for granting the motion to set aside and reinstate, and his action in so doing will not be disturbed by the appellate court

unless it is shown that his discretion in that regard has been abused.  (p. 51.)

(Appeal and Error, 4 C. J. § 2812; Dismissal and Nonsuit, 18 C. J. § 152 [Anno].)

2.  WITNESSES—*Showing That Client's Communications to Attorney Were to Perpetrate Fraud on Justice, to Render Them Admissible, Must be Clear; in Passenger's Action Against Automobilist for Injuries Showing That Plaintiff's Communications to Attorney Were to Work Fraud on Justice Held Insufficient to Render Them Admissible.*

In order to admit in evidence confidential communications between attorney and client under the exception to the general rule that if such communications were made in order to perpetrate a fraud on justice they are not privileged, it must clearly appear that such communications were made by the client with that intent and purpose.  (p. 53.)

(Witnesses, 40 Cyc. p. 2373.)

3.  JOINT ADVENTURES—*Where Evidence as to Joint Enterprise Between Plaintiff and eDfendant Conflicts, Court May Submit Question to Jury by Proper Instructions.*

When the evidence of the formation of a joint enterprise alleged to exist between plaintiff and defendant and material in the trial is conflicting and the court therefrom cannot determine, as a matter of law, that such joint enterprise existed, the court may submit the question to the jury by proper instructions.  (p. 56.)

(Joint Adventures, 33 C. J. § 97.)

4.  NEGLIGENCE—*Whether Engaging in Joint Enterprise or Joint Adventure Precludes One Party From Recovering Against Other for Personal Injuries in Such Enterprise Mooted But Not Decided.*

Does the fact that two persons are engaged in a joint enterprise, or are joint venturers, preclude one from recovering against the other damages for personal injuries negligently inflicted in carrying out the joint enterprise?  (Mooted but not decided.)  (p. 57.)

(Negligence, 29 Cyc. p. 543.)

5.  APPEAL AND ERROR—*Error Induced by Both Parties Cannot be Relied on by Either on Appeal; Defendant, Obtaining Instruction as to Disregarding Witness' Testimony for Fraud Omitting "Knowingly" or "Willingly," May Not Complain on Appeal of Instruction for Plaintiff Subject to Same Defect.*

Error induced by both parties cannot be relied upon by either in the appellate court.  (p. 58.)

(Appeal and Error, 4 C. J. §§ 2606, 2620.)

6.    SAME—*Verdict Based on Conflicting Evidence Will Not be Set Aside as Contrary to Evidence Unless Evidence Decisively Preponderates in Favor of Losing Party Indicating Improper Influence on Jury.*

A verdict based uon conflicting evidence will not be set aside as contrary to the evidence, unless there is a clear and decisive preponderance in favor of the losing party, indicating that the jury was moved by passion, prejudice or other improper influence. *(Davis, Dir. Gen.* v. *Lawrence Oil & Gas Company,* 94 W. Va. 73.)    (p: 59.)

(Appeal and Error, 4 C. J. § 2836.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Marion County.

Action by Calvin Thomas against Allen Jones. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Henry S. Lively,* for plaintiff in error.
*Shaw & Shaw,* for defendant in error. ·

LIVELY, JUDGE:

Defendant, Allen Jones, prosecutes error to a judgment entered March 15, 1927, on a verdict in favor of plaintiff, Calvin Thomas, for personal injuries alleged to have been caused by the negligence of Jones in driving his automobile while Thomas was a passenger or invited guest therein. The original declaration charges that plaintiff was a passenger in defendant's Dodge automobile at the invitation of defendant, and that defendant carelessly and negligently drove his car off the highway and over a steep embankment as a result of which the car was wrecked and plaintiff permanently injured on.............day of October, 1923. After the first trial in April, 1925, an amended declaration was filed by leave of court, the first count of which avers that plaintiff was a passenger for hire in defendant's car, and the second count charges that he was an invited guest therein at the time the injuries were received as a result of defendant's negligence. Both parties were coal miners, and were employed at Magnolia in Marion

county. Work was not continuous there, and learning that
better employment could possibly be obtained elsewhere and
particularly at Brady about twenty miles distant, there
seemed to be a tentative understanding between them that on
some idle day they would go to Brady together to ascertain
if better employment could be obtained. Both are negroes.
Defendant, Jones, owned and operated a Dodge touring car,
and he claims that plaintiff Thomas agreed to furnish the oil
and gas for the trip. Plaintiff says that upon learning that
the mine at Magnolia would be idle on Saturday, October ......,
1923, he went to defendant's home about six o'clock A. M.
of that day and asked him to drive to Brady that day, which
defendant declined to do. An hour or so later he found de-
fendant about to start with his car to Fairmont, (which is
about half way to Brady), with a Mrs. Davis, who was then
in the car and who was to be taken as far as Fairmont where
she would proceed to Brady by train, and plaintiff requested
permission of defendant to go with him in the car to Fair-
mont, which defendant agreed to do if plaintiff would pay
for oil and gas. Two other negro men, witness Starr and
Bishop (not a witness), also entered the car to go to Fairmont
on the promise of Starr to pay for oil and gas, as plaintiff
contends. The party proceeded to Fairmont where some oil
or gas was paid for by plaintiff, thence to Brady still accom-
panied by Mrs. Davis. There plaintiff and defendant sepa-
rated. Plaintiff inquired of the proper person at the Brady
Mine for work, but did not succeed. Defendant did not in-
quire for work. Late that day plaintiff and defendant accom-
panied by Starr and Bishop began the return journey in the
car, which at all times was driven by defendant. On the way
back when a place called Worthington was reached, it was
discovered that the car was about out of gas, and all de-
clared they were out of money. Plaintiff said that he could
get gas on credit at Enterprise, a town some distance on the
main highway, which would take them off of the direct route
to Magnolia, their objective. On the way to Enterprise Will
Davis entered the car and sat in the rear seat between plain-
tiff on his right and Starr to his left. Bishop was in the
front seat with defendant who was driving. Soon after Davis

entered, they topped a small elevation and started upon a
slight down grade. The hard surface at that part was about
18 feet wide and with a berm on the right, and was practi-
cally straight for nearly a mile. This was about 9:30 P. M.
The car began running rapidly and defendant was cautioned
by plaintiff to "hold her" and defendant replied. "I got
her." Two other cars were coming in an opposite direction,
the rear one having very bright lights. Defendant drove his
car with the right wheels on the berm a distance variously
estimated at from forty to two hundred feet (according to
witness Cummings, a distance of 125 feet by actual measure-
ment), and left the road when the right wheels struck a
gully at a small culvert, plunged over an embankment, turned
over, reversed its direction, was demolished considerably, and
caused plaintiff's injuries. The right side of his face was
mashed, his cheek bone and other bones of his face had to be
removed and his right eye taken out. His injuries were
severe and permanent. The verdict and judgment is for
$7,500.00, and no claim of excessive damages is made. De-
fendant claims that the light from the second car he met, and
which all agree was going at great speed, blinded him, and
that it hit his car and knocked it over the embankment. Davis
corroborates defendant, and says that the car was thrown over
the embankment as a result of the collision. Bishop died
before the trial. Plaintiff and Starr say the car was not hit,
but that defendant apparently lost control, the car having
"zigzagged" before going over the embankment. A witness
who was following close behind the wrecked car says that the
two cars had not only passed defendant's car but had also
passed his (witness') car, before defendant's car left the road,
and corroborates other physical evidence that there was no
collision. Suffice it to say that the evidence as to what caused
defendant's car to plunge over the embankment is conflicting,
and the jury has determined that conflict in favor of plain-
tiff. We cannot say, as we are asked to do, that the evidence
so clearly excuses defendant from negligence that we should
hold, as a matter of law, that he was not guilty of negligence.
Enough of the facts, as shown by the evidence, have been
detailed sufficient to give a clearer understanding of the

points of error involved and our conclusions thereon. It may be remarked here in passing that many of the reported cases are so meager of facts that it is often difficult to fully appreciate the application of the law as applied. The facts govern the application of law.

The errors assigned are: (1) The court erred in permitting reinstatement of the case on the docket after a voluntary non-suit had been suffered by plaintiff; (2) Refusal to permit attorneys Musgrave and Lanham to testify to communications made to them by plaintiff while they were acting as his attorneys; (3) Refusal of, and the giving of instructions; and (4) Refusal to set aside the verdict as contrary to the law and the evidence.

There were three trials. The first trial resulted in a voluntary non-suit, the reinstatement of which is the first point of error; in the second trial the jury disagreed; and the last trial resulted in the present verdict and judgment. At the conclusion of plaintiff's evidence on the first trial defendant moved the court to strike out the evidence and direct a verdict for defendant, upon consideration of which the court announced that the motion would be sustained, the jury was then brought into the court room, but before they were so instructed plaintiff requested to be allowed to enter a non-suit. The court granted the request, a juror was withdrawn and the other jurors discharged, and judgment entered for costs against plaintiff. Then plaintiff moved the court to set aside the non-suit and permit the case to be reinstated. This was on April 18, 1925, and on the 13th day of the following May, the court set aside the non-suit and reinstated the case on the trial docket, the order stating that "this court is of opinion, in view of the variance between the allegations in plaintiff's declaration and his proof offered upon the trial, and in view of the evidence offered and the rulings of the court in this case, and in order that justice may be done in this case", as the reason which actuated the granting of the motion. Defendant says the court erred in reinstating the case, because plaintiff showed no good cause therefor, citing Chap. 127, Sec. 11, Code; *Post* v. *Carr,* 42 W. Va. 72; *Higgs* v. *Cunningham,* 71 W. Va. 674; and *State* v. *Damron,* 85 W.

Va. 619. In *Post* v. *Carr,* the judgment was by default.
The plaintiff had appeared, produced his witnesses and the
court entered judgment. Later in the term Carr appeared
and moved to set aside the judgment. Sec. 47, Chap. 125,
of the Code says that if a default judgment be entered in
court, "it shall not be set aside without good cause being
shown therefor." Carr attempted to show good cause, but
the court held that his evidence was not sufficient. The case
under consideration is not a default judgment, and the *Post*
v. *Carr* case has little application. Sec. 11, Chap. 127, Code,
authorizes the court within a stated time to set aside a non-
suit on motion upon payment of accrued court costs; and in
*Higgs* v. *Cunningham, supra,* the plaintiff's case was dis-
missed for failure to reply to a plea in abatement filed at rules.
At the same term he asked that the order of dismissal be set
aside and asked permission to reply to the plea, on the ground
that the case was dismissed in the absence of himself and
counsel, and on the further ground that he had a right to
file replication to the plea in abatement during the term of
the court. The trial court denied the motion. The appel-
late court held that good cause had not been shown, saying
that the statute did not dispense with the showing of good
cause; and pointing out that the granting or refusal of such
motion to set aside and vacate was within the sound discre-
tion of the trial court, and holding that the record disclosed
no abuse of discretion. *State* v. *Damron, supra,* is very sim-
ilar to the case at bar. After plaintiff in that case had closed
his evidence defendant moved for instructed verdict on the
ground of fatal variance between the declaration and proof.
The court was about to give such instruction when plaintiff
took non-suit, and immediately thereafter moved the court to
set aside the non-suit and reinstate the case. The court
granted the motion. Counsel in that case, as here, insisted
that good cause was not shown in support of the motion.
The appellate court sustained the trial court, holding that
the trial court could consider the evidence heard on the trial
in support of the motion, that it had jurisdiction to act, and
had not abused its discretion. Here, the court says in its

order that the evidence was considered together with the
rulings of the court in the trial, and in order that justice
might be done the case was reinstated.  We do not have the
record of the first trial before us, and it may be that the
court concluded on more mature deliberation that the rulings
were erroneous, or that the variance was not fatal, and there-
fore its conclusion to instruct for defendant would have
worked an injustice.  We are not disposed to overrule *State
v. Damron, supra.*

The second point of error is based on the refusal to permit
attorney Musgrave and to require attorney Lanham to divulge
to the jury communications received by them from plaintiff
while acting as his attorneys.  It appears that a short time
after plaintiff had been discharged from the hospital he con-
sulted both Musgrave and Lanham for the purpose of employ-
ing them to sue for the injuries received by him.  Musgrave
would have testified that plaintiff had informed him that the
accident was caused by the car which they met coming from
Clarksburg striking the car of defendant and knocking it off
the road, and that the defendant was handling the car in the
usual manner, and in his opinion was using due care; that the
occupants of defendant's car were all excited when they saw
the other car coming at a high rate of speed and were ex-
pecting that something would happen.  Lanham refused to
testify on the ground that the communications made him by
plaintiff were confidential, but had the court required him to
testify he would have testified substantially to the same com-
munications made to Musgrave.  It appears that the relation
of attorney and client existed at the time of the alleged com-
munications.  Defendant's counsel recognizes the rule strictly
followed in this State that communications between client and
attorney are privileged and cannot be divulged; but insists
upon the exception to the rule that such communications are
not privileged where a fraudulent claim is sought to be en-
forced and it is insisted by counsel for defendant that plain-
tiff well knowing that the car was knocked from the road with-
out any negligence on the part of the defendant, was seeking
to enforce a claim against him fraudulently.  It appears that

these attorneys, without making further investigation as to
how the accident happened and whether defendant was neg-
ligent, declined to institute suit.    It is quite well established
that if a client seeks the aid of his attorney in the perpetra-
tion of a crime or to commit a fraud his communications are
not privileged and the attorney may testify.    28 R. C. L.,
Sec. 158.    The exception to the general rule is well illustrated
in *Gebhardt* v. *United Railway Company*, 220 S. W. 677, 9
A. L. R., 1076, in which plaintiff had sued for injuries in a
railroad accident.    She had attempted to employ an attorney
stating to him that as a fact she was not in the railroad acci-
dent at all, but that several persons were injured therein, and
she was willing to state that she was on the car and received
injuries as a result of the accident.    The court properly ad-
mitted the attorney to testify to her declarations to him be-
cause it was a clear attempt on her part to commit a fraud
on justice, through the aid of the attorney, an officer of the
court.    In the instant case it is by no means conclusive that
plaintiff was attempting to commit a fraud.    He told his coun-
sel what he then conceived to be the facts.    He may have been,
and undoubtedly was, under the impression that the car was
knocked off the road without fault upon the part of defendant,
but after fuller investigation, the facts were not as he then
thought them to be.

The able trial judge in his ruling on the admissibility of the
proffered evidence took the position, after reviewing the facts
and circumstances disclosed by the evidence, that plaintiff in
his consultation with the attorneys was not attempting to per-
petrate a fraud.    He reviewed the *Gebhardt* case where the
woman was attempting to obtain damages in a railroad acci-
dent when she was not even on the car and could not have
been hurt.    He points out the fact that plaintiff was actually
in defendant's car and there was ample independent evidence
that there was not a collision, and that defendant was negli-
gent.    The ruling of the trial judge is in part as follows:

> "Every detail is correct until it comes up as to
> how the accident happened.    He (plaintiff) says
> (to the lawyer), 'I believe a car was coming from

Clarksburg and struck the car and knocked it off
the road.' This lawyer, instead of going to A, B
and C, who saw this accident, goes and consults the
policeman at Clarksburg for some reason,—I think
possibly to find out whether the car coming from
Clarksburg was a stolen car,—he didn't go to these
other witnesses here. Here is a witness who says
this car zigzagged for quite a distance; so does the
plaintiff; several witnesses say the car left the
paved road and ran twenty feet to one hundred
and twenty-five feet on the berm, soft berm, where
it struck a gully or little depression, and whirled
and went down over the bank. The plaintiff was
dazed. The plaintiff doesn't know really what did
happen. He says the car zigzagged. He says the
car got off the paved street, and I believe he is cor-
roborated by other witnesses. I don't say they
told the truth, but I am giving them the full benefit
of this evidence as if it was absolutely true at this
time. Now, the strongest inference that can be
drawn from the evidence of the attorneys here is
that this witness (plaintiff) told them what he then
believed was the truth, the immediate cause of the
car going over the bank. He believed that it had
been struck. But why didn't they go into the de-
tails and find out that he also knew it was zig-
zagging before. He also knew it was off the paved
road. He also knew that he was dazed and he
hardly knows after that what did take place, and
didn't know until he was in the hospital, until he
was told by this man Will Davis, who made himself
very busy, according to his own evidence, going
around and telling people how it happened. * * *
Here is a man just out of the hospital or possibly
still in the hospital. He is already dazed. He has
lost part of his face, lost an eye, and he has lost
part of his brain. He has heard Will Davis, prob-
ably, say the car did come that way and strike
them. He says 'I believe the car was struck.' I
don't think, gentlemen, that it is a case which
would indicate that the plaintiff was at that time
trying to frame up a case and perpetrate a fraud.
If what he said there turns out to be true and it
turns out that he knew what he said to these law-
yers was true and that he said it for the purpose
of committing fraud against the company, (de-
fendant), it would be a different proposition; but

> what he said to Lanham and Musgrave, according
> to the corroborative evidence here, possibly was
> not true. * * * It isn't a case which addresses
> itself to the Court wherein the plaintiff has delib-
> erately gone to work and tried to frame up a case
> against the defendant.''

We concur with the trial court in the conclusion that a deliberate effort to commit fraud on part of plaintiff was not shown, and that the evidence could not be introduced under the exception to the general rule excluding privileged communication.

We now come to the instructions. Defendant offered and was refused a peremptory instruction at the conclusion of the evidence. Under the evidence and circumstances detailed the question of defendant's negligence and the resultant damages was clearly a jury question, and the peremptory instruction was properly refused; but defendant argues that even if defendant was negligent, the law does not permit recovery because plaintiff and defendant were engaged in a joint enterprise and had joint control and operation of the car at and immediately before the time of the injury, and the negligence of defendant was imputable to plaintiff, barring recovery. Defendant's instruction No. 17, refused, would have told the jury that if they believed from the evidence that plaintiff and defendant were returning from a joint adventure, and both shared the expenses, and the car was under the joint control of both, that is, that both plaintiff and defendant had equal charge of the car and its destination, then plaintiff was not an invited guest as charged in the second count, but was a joint venturer and being such cannot recover. This instruction told the jury, as a matter of law, that the parties were joint venturers, and even admitting that this fact would bar recovery, the court was justified in refusing it, because the evidence does not warrant the conclusion, as a matter of law, that they were such. Annotations to *Keiswetter* v. *Rubenstein,* 48 A. L. R., p. 1055; *Coleman* v. *Bent,* (Conn.), 124 Atl. Rept. 224. Here plaintiff says he went with defendant in his car, with an agreement to pay by furnishing oil and gas, and that defendant had already concluded to and

was actually starting to Fairmont to take Mrs. Davis there where she would go further to her destination by train. He admits, however, that a trip had been contemplated to Brady for the purpose of obtaining work. Defendant however says that he went from Magnolia to Brady in pursuance to an agreement theretofore made to carry out a joint enterprise or undertaking and payment jointly of the expenses incurred. However, by defendant's instruction No. 18, given, the court told the jury that if they believed that the trip was undertaken by the parties for the purpose of seeking employment at Brady, that they shared the expenses, plaintiff furnishing part of the oil and gas, that they had joint control and operation of the car at and immediately before the time of the accident, then they were on a joint enterprise, and they should find for defendant, even though they found that defendant was guilty of some negligence which directly or indirectly caused the accident. The jury found they were not engaged in a joint enterprise, as they had a right to do under the conflicting evidence. There is much authority for the proposition that where plaintiff and defendant are engaged in a joint enterprise or undertaking, defendant is responsible to plaintiff for negligence which caused plaintiff's injury. In *Wilmes* v. *Fournier*, (1920) 180 N. Y. Supp. 860, plaintiff was an occupant of defendant's car and was injured by the latter's negligence. It was contended by defendant that they were on a joint enterprise and therefore plaintiff could not recover. That is defendant's contention in the instant case. The court held that they were not on a joint enterprise, but was of the opinion that even though they had been on a joint enterprise that fact would not relieve the driver of the car from liability to the other occupant for the driver's negligence in its operation. The opinion says: "No case has been cited by counsel in which one person, concededly engaged in a common enterprise, has sought to maintain an action against one of his associates. The fact whether there is a joint enterprise is one of importance in the class of cases cited, when the action is against a third person, but as between themselves, I know of no rule of law that throws a

mantle of protection over the tortuous acts of an associate in a joint enterprise or in a partnership. Suppose one person assaults his co-partner, is the wrongdoer immune from liability because they were engaged at the time of the assault in the partnership business? Suppose that, while engaged in the partnership business, one partner conducts himself so carelessly as, except for such partnership relations, would give a right of action, is the wrongdoer not liable to the injured partner? True they are in a sense each acting as agent for the other, but does not an agent owe the duty of care towards his principal, and a principal towards his agent? (Citing authorities). A joint enterprise is not for the purpose of permitting one of the parties thereto to commit a tort upon his associates.'' And in *Bushnell* v. *Bushnell,* (Conn. 1925), 131 Atl. Rept., 432, a wife sued her husband who went to sleep and ran the car against a tree on returning from taking their son to a college where he was a student. She was injured, and obtained a verdict. Defendant plead ''joint enterprise'' barring her from recovery. The opinion says: ''He who in the process of a joint enterprise is engaged in operating a vehicle represents, in so doing, all who are associated with him in that enterprise, and if he is negligent, any one of them may look to him for damages upon the same basis as that upon which a principal holds an agent liable for his misconduct. * * * The doctrine of joint enterprise was wholly inapplicable to such situation.'' See also *Donohue* v. *Jette,* (Conn. 1927), 137 Atl. Rept. 724; *Knudson* v. *George,* (Wis. 1914), 147 N. W. 1003. It is doubtful if the doctrine of joint enterprise has any place in the instant case, a question unnecessary to decide, for the jury under conflicting evidence has found that there was no joint enterprise. A verdict for plaintiff necessarily forces the assumption that all questions submitted to the jury were found in plaintiff's favor.

Error is predicated on plaintiff's instruction No. 1, which related to the province of the jury in determining the credibility of the witnesses and the weight to be given to their testimony based on their interest or lack of interest in the

case, bias and prejudice, if any, and their opportunity to observe and know the facts about which they testify and their demeanor on the stand; which instruction ends: "And if the jury finds that any witness has testified falsely about any material fact in the case, you may disregard the whole of such witness' testimony, or give to it such weight as you believe it is entitled to." The criticism of this instruction is that it leaves out the word "knowingly" or "willingly"; that is, that the witness knowingly or willingly testified falsely about any material fact. The leaving out of these qualifying words was criticised in *State* v. *Green*, 101 W. Va. 703, and in *State* v. *Lee*, 103 W. Va. 631, 138 S. E. 323. It appears however that a similar instruction was offered and given on behalf of defendant, which also omits the qualifying words. Defendant is in no position to take advantage of an error which he in part induced. Such technical error, especially in a civil cause, is not always sufficient to reverse.

Plaintiff's instruction No. 8 on what is necessary to constitute the relation of joint venturers or "joint enterprise" is not binding, and if technically incorrect, when read in conjunction with defendant's instruction No. 18 on the same proposition, could not have mislead. Instructions must be read and considered together and one may supplement any defects or omissions in the other when they are not binding.

The last assignment of error is the failure of the court to set aside the verdict and award a new trial, because contrary to the clear preponderance of evidence. In support of this assignment it is pointed out that plaintiff, as well as some of his witnesses, made statements on the first trial concerning the accident which are irreconcilable to statements made on this trial; and also that statements of the plaintiff on the first trial with reference to the inception of the trip of Brady and its purpose, are different from those made on the present trial. No objection was made to these alleged contradictory statements on that ground at the time the evidence was offered, and defendant contented himself with the attempt to impeach the testimony by introducing their former evidence, as taken down by the court stenographer. This is the usual way of

impeaching the testimony of a witness. It may be done by showing that on former occasions the witness has failed to state material facts, different or conflicting facts testified to by him on the present occasion. 1 Greenleaf on Evidence (16th ed.), Sec. 461. The jury had all this evidence, alleged to be conflicting and irreconcilable, before them for the purpose of impeachment together with the explanation of the witnesses in reference thereto. It was within their province to weigh and consider these conflicting statements and their explanations, and give to the testimony whatever weight they concluded it was entitled to receive. As was hereinbefore intimated, the evidence of the negligence of the defendant in the operation of his car which caused it to go over the embankment is conflicting and we find sufficient evidence to sustain the verdict in that particular, if we leave out the testimony of the plaintiff relating thereto. On the whole, we cannot say that the preponderance of evidence is in favor of the defendant and his claimed lack of negligence. There is nothing to show that the jury was biased, inflamed or influenced by prejudice in any way, or rendered the verdict from any ulterior motive.

We affirm the judgment.

*Affirmed.*