JULIA LAWSON ADAMS *v.* HAROLD HUTCHINSON

(No. 7236)

Submitted September 20, 1932.   Decided November 22, 1932.

(Rehearing denied January 10, 1933.)

*Steptoe & Johnson, Mark T. Valentine,* and *Stanley C. Morris,* for plaintiff in error.
*Chas. L. Estep,* for defendant in error.

LITZ, JUDGE:

Harold Hutchinson prosecutes this writ to a judgment, entered on a verdict of $27,500.00, against him in favor of Julia Lawson Adams for personal injury sustained by her in Logan county while riding in a Ford sedan automobile owned and driven by defendant. His wife and the husband of plaintiff were also in the car at the time of the accident.

About eight P. M., September 19, 1930, Mrs. Hutchinson, by telephone, invited Mr. and Mrs. Adams to accompany her and her husband to a dance to be held that evening at the Logan Country Club, approximately fourteen miles west of the city of Logan, the Adamses having previously decided to attend the dance. Soon after arriving at the Adams home, between eight-thirty and nine o'clock, the four imbibed liquor furnished by Adams. The party left in defendant's car about nine-thirty, arriving at the clubhouse, where the dance was

in progress, around ten o'clock. Some twenty couples were in attendance. The dance floor was twenty by forty feet in size. Except for a brief intermission at twelve o'clock, when the guests were served refreshments in a small adjoining room, the dance, in which the Hutchinson-Adams party participated, continued until 2 A. M. When plaintiff entered the room where the refreshments were being served, defendant, who was already seated at a table, gave her his chair, and a piece of pie. She testified she did not dance with him, but observed nothing in his conduct to indicate that he was intoxicated. However, some of the guests refused to remain because of general drinking. At the conclusion of the dance, the Hutchinsons and Adamses left for Logan in the Ford sedan, with Hutchinson driving, Adams sitting beside him, and their wives riding in the rear seat. After going six or seven miles through fog, defendant lost control of the car and it plunged approximately thirty feet from the road onto the tracks of the Chesapeake & Ohio Railroad. The occupants of the car, all of whom were seriously injured, were taken to the Hatfield-Lawson hospital at Logan. Adams never regained consciousness.

For more than a mile approaching the place of accident, the road curves and dips in conformity with the contour of the hillside along which it is constructed. The estimated width of the hard-surfaced portion thereof is from sixteen to twenty feet. About 120 feet west of the point where the car went over, the road curves left toward the hillside into a ravine and thence right up a slight grade. Wheel tracks disclosed that the car, on reaching the bottom of the dip where the road turns right, ran partially off the pavement to the left, and continuing thirty or forty feet along the upper side of the road, struck a rock embankment, thence veering to the right, proceeded fifty to ninety feet, and went over the bank to the right.

As already stated, there was general drinking by the guests at the dance, but the testimony is conflicting as to whether defendant was noticeably drunk or drinking while there. Witnesses introduced on behalf of defendant, testified as follows: Harold Hutchinson, states that he does not know whether he took more than one drink while at the Adams home; that he

does not remember whether he took additional drinks at the dance, nor does he remember what occurred while he was there; that he remembers leaving the clubhouse and encountering fog along the road, but does not remember what happened thereafter; and that several weeks later, plaintiff told him he was so drunk when refreshments were served that he failed to notice that she ate his pie. On cross-examination, he admitted that he did not become intoxicated from the whiskey he drank at the Adams home, and had no difficulty driving to the clubhouse; and that the concussion of his brain resulting from the injury may have caused him to forget some of the events preceding the accident. Mrs. Hutchinson, testified that plaintiff told her some weeks after the accident she had never seen defendant "tighter" than he was on the night of the dance. A. B. C. Bray, Jr., who collected the admission tickets, stated that defendant appeared to be drinking upon entering the ball room. Mrs. George J. McTigue, testified that defendant seemed to be drinking when he danced with her during the second dance of the evening; that he was apparently under the influence of liquor after the intermission; and that plaintiff, while in the hospital, told her that he was drinking on the night of the accident. Mrs. B. C. Harris, who was at the dance until midnight, asserted that defendant appeared to be under the influence of liquor. Mrs. G. W. Raike, testified that defendant started a dance with her, which she declined to complete because of his intoxication. Mrs. Willis Parsons, testified that she danced a few steps with defendant just before two o'clock and was of opinion that he "had a drink" at that time, but on cross-examination, said that he "seemed to know as much as he did when he was sober". B. C. Harris, testified that he left the dance about twelve o'clock because of the "amount of drinking going on"; and that he thought defendant was "pretty full". Horace Stewart, driver of the ambulance which carried the injured from the wreck to the hospital, testified that he detected the odor of liquor when he assisted in placing the men in the ambulance, but could not ascertain whether it came from Adams or defendant. J. T. Wyat, owner of the ambulance, testified that he smelled whiskey around the wrecked car when he removed the injured to the hospital. B. Van Dyke, a brakeman on a train arriving

just after the accident, stated that there was an odor of whiskey about the four bodies after they had been removed from the car, but he could not determine from which person it came. Mrs. Wade F. Hill and Mrs. L. W. Lawson testified that plaintiff, while in the hospital, told them that defendant was drunk on the night of the accident. The only reply by plaintiff to these and other alleged similar statements by her is, substantially, that she does not remember making any of them.

Evidence for plaintiff on the issue of drunkenness, follows: Mrs. Hutchinson stated that she took only one drink of liquor while at the dance; that she did not see her husband take another drink after leaving the Adams home; and that she did not think he was under the influence of liquor when they left the clubhouse. Plaintiff testified that she did not drink any liquor after leaving her home, and that she saw no one else take a drink before or after going to the dance. Three other witnesses, who claimed to have had personal contact with defendant immediately after the accident, denied smelling whiskey on his breath. Three doctors, who attended the injured persons immediately after they were taken to the hospital, were introduced as witnesses for plaintiff without being examined on this issue.

The evidence of fog encountered by the party along the road to the point of accident, follows: Plaintiff stated that "it was foggy in spots" until they reached Phico tipple, about two miles west the place of accident; but she does not remember whether the fog extended to the latter point. Wade F. Hill, witness for plaintiff, testified that the air was "very foggy * * * in patches" from the clubhouse to a point about one-fourth of a mile beyond the place of accident. Hutchinson, remembers encountering fog pockets along the road immediately after leaving the clubhouse, but does not remember how far the fog continued. Mrs. Hutchinson says the air was foggy when they left the clubhouse; that as they continued along the road dense pockets of fog "would appear and disappear"; and that she noticed no change in the fog prior to the accident, but does not remember whether there was fog where the car went over the bank. A. B. C. Bray, Jr., testified that the air was "very foggy" when he left the clubhouse

after the dance, and "seemed to be dense all the way" to a point beyond the scene of accident. There were pockets of fog "all the way" along the road, according to Mrs. G. J. McTigue. Dr. C. A. Davis testified, as a witness for plaintiff, that there were very dense pockets of fog, "more or less all the time", along the road from the clubhouse to a point beyond the scene of accident.

The final pertinent issue is whether defendant, under the circumstances, was driving at a reasonable rate of speed from the clubhouse to the scene of the accident. Plaintiff testified that the road is "real narrow" with curves and dips along the hillside; that the car traveled, according to her estimate, from thirty-five to forty miles an hour from the clubhouse; and that she thought it went a little faster going down the dip just before hitting the rock. Dr. Wade F. Hill, testifying in her behalf, stated that as the fog rendered driving difficult, he maintained a speed of twenty to thirty-five miles an hour returning from the dance; and that a speed of thirty-five to forty miles an hour would have been "too fast". A. J. Darrah, as a witness for plaintiff, testified that the hill road is "exceedingly dangerous" because it is narrow and "full of dips and bumps". Dr. C. A. Davis (on being re-called by defendant), testified that he was unable to see through the windshield of his car while passing through the pockets of fog because of their density; that he did not exceed twenty miles an hour until he had passed the point of the accident; and that the road is especially dangerous when fog is present. Mrs. Hutchinson, testifying for defendant, stated that the car traveled twenty or twenty-five miles an hour through the fog, and thirty to thirty-five miles an hour "in the clear spaces"; and that no one objected to the speed of the car. A. B. C. Bray, Jr., testified at the instance of plaintiff that, because of the fog, he drove about twenty-five miles an hour returning to Logan, and that it would have been dangerous to operate a car at the rate of thirty-five or forty miles an hour.

It thus appears by uncontroverted evidence that there was either continuous fog of varying density or pockets of dense fog of frequent occurrence from the clubhouse to a point beyond the place of the accident. Plaintiff admits that she was aware of its existence, yet she did not protest the speed of the

car. The fog was an obvious danger which could not be ignored by her. In view of the fog, the dangerous character of the road, the speed of the automobile, and the other attendant circumstances, plaintiff, by failing to protest, became a co-adventurer with defendant in the risk resulting in her injury, and because of such contributory negligence is barred from recovery. If she knew or by the exercise of reasonable diligence should have known that defendant was not taking proper precautions, it became her duty to remonstrate. In *Clise* v. *Prunty*, 108 W. Va. 635, 152 S. E. 201, 203, involving an injury to an automobile guest in Pennsylvania by negligence of the driver, the law of that state was stated as follows: ''Where possible danger is reasonably manifest to an invited guest, and she sits by without warning or protest to the driver and permits herself to be driven carelessly to her own injury, she becomes a co-adventurer in the risk and is thereby barred of recovery. *Hardie* v. *Barrett*, 257 Pa. 42, 46, 101 A. 75; *Minnich* v. *Transit Co.*, 267 Pa. 200, 110 A. 273; *Nutt* v. *R. R. Co.*, 281 Pa. 372, 377-8, 126 A. 803.'' The same rule was later adopted as the law of this state in *Herold* v. *Clendennen*, 111 W. Va. 121, 161 S. E. 21.

We, therefore, reverse the judgment, set aside the verdict and remand the case.

*Reversed and remanded.*

Upon petition for rehearing:

Petition for rehearing assumes that the basis of the decision is, in effect, that plaintiff should have anticipated the car striking the rock, which she could not see until the moment of the impact. This is an erroneous conception. It is not the theory of the opinion that plaintiff should have observed the rock in time to warn the driver, or that she should have foreseen the exact manner in which the accident resulted; but that the circumstances, upon the present record, were such as to have put her on notice of possible danger. According to the testimony of plaintiff herself, in connection with other evidence which she developed, defendant was driving at a dangerous rate of speed. She is not precluded from another trial to establish a recoverable case.