FAYE HUTCHINSON, *admrx.*

*v.*

DONALD EDWIN MITCHELL

(No. 10880)

Submitted September 17, 1957. Decided December 17, 1957.

*Jenkins & Jenkins, John E. Jenkins, John E. Jenkins, Jr.,* for plaintiff in error.

*J. Floyd Harrison, William J. Wells,* for defendant in error.

PER CURIAM:

The plaintiff, as administratrix, instituted this action of trespass on the case in the Circuit Court of Wayne County to recover damages for the wrongful death of the decedent, William S. Shannon, allegedly the result of the negligence of the defendant. The jury returned a verdict for the plaintiff in the amount of $10,000.00, and judgment was entered thereon to which this Court granted a writ of error and supersedeas on February 25, 1957.

The facts are undisputed. Defendant, twenty-three years of age, and the decedent, Shannon, nineteen years of age, had associated socially for approximately five years previous to the accident out of which the instant action arose. On the night of December 4, 1954, the two met at approximately 7:30 P. M. in Wayne, West Virginia. Shortly thereafter, they entered defendant's automobile, went to a drive-in on U. S. Route 52 and purchased three bottles of beer apiece. Taking the beer with them, they proceeded to Huntington, West Virginia, to a skating rink.

Upon leaving the skating rink, they returned to Huntington where each drank another bottle of beer and ate a hamburger sandwich. They then went to Catlettsburg, Kentucky, remained a short time, and returned to another drive-in on U. S. Route 52, approximately five miles from the scene of the accident. There they purchased "about one or two" bottles of beer, and, taking it with them, started back to Wayne. At a point, known locally as the "Dickson Crossing", where a railroad crosses the highway, the automobile went out of control, left the highway and went into a creek. The decedent, Shannon, drowned. Subsequently, it was determined that he had suffered a broken arm and facial bruises.

The defendant testified that during the course of the evening, he had driven at speeds up to 65 miles an hour; at the time the automobile went out of control, his speed was 70 to 75 miles an hour; and, he could feel the effects of the beer, but was not intoxicated. A constable, James Ramey, testified that he had seen and talked to both defendant and Shannon at the last drive-in shortly before the accident, and that neither appeared to be drinking or intoxicated. A State Trooper testified that the maximum speed at which the "crossing" could be safely approached from either direction was 35 to 40 miles an hour. The distances between the places visited by the defendant and the deceased on the night of the latter's death follows: From Wayne to the Dickson Crossing, 8 miles; from the crossing to the Lavalette intersection, 4 miles; from the Lavalette intersection to the City of Huntington, 8 miles; from Huntington to Kenova, 5 miles; from Kenova to the Lavalette intersection by Route 75, 12 miles; from the intersection to Angie's Tavern, 1 mile; from Angie's back to the Dickson Crossing, where the wreck occurred, 4 or 5 miles; and from the top of Bloss Hill to the Dickson Crossing, in the valley below, about 2 miles.

The controlling question presented upon this writ of error is whether plaintiff's decedent was, as a matter of law, guilty of negligence proximately contributing to his death. That question was raised in the trial court upon

motion at the end of all of the evidence to direct a verdict for the defendant, and by motion of the defendant after verdict to set aside the verdict and grant a new trial. The ruling of the trial court was against the defendant upon both of these motions, exceptions were taken to the rulings, and the trial court's action in each instance is assigned as error in this Court.

There can be no question from the evidence in this record that the defendant was guilty of primary negligence. His conduct in driving his automobile at a speed of 70 or 75 miles an hour for a distance of approximately two miles to and across a crossing which he knew, or should have known, was hazardous to approach at that rate of speed, leaves no room for doubt as to the defendant's negligence, and in that regard the verdict of the jury is plainly supported by the evidence. The term "proximate cause" has been defined as that cause "* * * without which the accident would not have occurred. * * *" *Twyman* v. *Monongahela Co.,* 118 W. Va. 330, 191 S. E. 541. It has also been held that the term "proximately contributed" is of similar import. *Divita* v. *Atlantic Trucking Company,* 129 W. Va. 267, 40 S. E. 2d. 324.

This Court has long recognized the rule that an automobile guest passenger, who fails to protest against obviously dangerous conduct on the part of the driver, will be deemed guilty of contributory negligence, and barred from recovery. In *Clise* v. *Prunty,* 108 W. Va. 635, 152 S. E. 201, a guest was injured by the skidding of her host's automobile on an icy road, and it was held that she had acquiesced in the operation of the automobile without chains, though the danger was evident. In *Adams* v. *Hutchinson,* 113 W. Va. 217, 167 S. E. 135, the plaintiff was injured when an automobile carrying her and three others ran off the road at a late hour on a foggy night while the party was enroute home from a dance where there was much drinking of intoxicating liquor, which conduct had been participated in by at least some of the members of the ill-fated automobile party, and of which the plaintiff was aware. *Broyles* v. *Hagerman,* 116 W. Va. 267, 180 S. E.

99, is a case in which the plaintiff was injured in an automobile collision while she was a guest in a five passenger automobile in which nine adults and two children were riding when the accident occurred, extreme overloading being manifest and a contributing cause of the plaintiff's injury. In the *Adams* case, this Court said in the only syllabus point that: "An automobile guest failing to protest the action of the driver in encountering a possible danger reasonably apparent to both, is, ordinarily, barred from recovery against the host for resulting injury."

It was held by this Court in *Kelly* v. *Checker White Cab Company, Inc.,* 131 W. Va. 816, 50 S. E. 2d. 888, that the guest of the driver of an automobile could not recover as a matter of law where such guest had acquiesced in the operation of an automobile at excessive speed over obviously hazardous highways.

The most recent case, and the one upon which the defendant most strongly relies, is *Hurt, Executor* v. *Gwinn,* 142 W. Va. 259, 95 S. E. 2d. 248. The syllabus point of that case reads as follows: "Where an invited guest in an automobile knows, or in the circumstances should know, that the driver of the automobile, at the time of his driving, engages in drinking intoxicating liquor to an extent likely to affect the manner of the driving, and the guest voluntarily continues a passenger after having had reasonable opportunity to leave the automobile, he is guilty of contributory negligence, and is denied any right of recovery as to injuries resulting from the negligence of the driver fairly attributable to the drinking of the driver." In the opinion, the Court said: "A guest passenger voluntarily following such course of known hazardous conduct, [in this case drinking alcoholic liquor in frequent and large amounts], fraught with strong possibility of the very type of accident which occurred, cannot be permitted to recover merely because she had no opportunity to escape injury after the accident began to take place—in the instant case, after the automobile of the defendant began to skid. The fact cannot be avoided or ignored that plaintiff's decedent had a number of opportunities to leave

the automobile of defendant after the trip began and after she had knowledge, or should have had knowledge, in the known circumstances, of the great danger incident to the drive." This Court is unable to distinguish this case from the *Hurt* case upon the facts. Throughout the evening, the defendant and his guest passenger voluntarily engaged in a course of conduct which could be expected to produce the result which finally occurred. According to the uncontradicted testimony, each consumed five or six bottles of beer during the evening, and the guest was aware of the drinking of this beverage by the driver. Again the evidence is uncontradicted to the effect that at various times during the evening, the driver operated his automobile in excess of the legal speed limit. It is also evident from the testimony that the plaintiff's decedent had several opportunities to leave the automobile of the defendant after the trip began, and after he "had knowledge, or should have had knowledge, in the known circumstances, of the great danger incident to the drive." The fact that the plaintiff's decedent had no opportunity to leave the automobile except at a great hazard after it began the descent of Bloss Hill toward the crossing where the accident occurred, does not remove from his conduct the stigma of contributory negligence in view of the events which had occurred previously that evening while he travelled with defendant.

We find no merit in the other assignments of error, but deem it necessary to discuss No. 13. The defendant's bill of exceptions No. 14 is a true copy of an order entered by the Circuit Court of Wayne County on August 29, 1955, wherein it appears that the present action came on for trial on July 25, 1955, and, after the introduction of all of the evidence, and both parties having rested, the defendant moved the court to direct a verdict in favor of the defendant, whereupon the plaintiff, by counsel, before a ruling upon the defendant's motion, moved the court for a nonsuit, which motion was granted. Thereafter, on August 9, 1955, pursuant to notice, the plaintiff, by counsel, moved the court to set aside the nonsuit, reinstate the action and "* * * the defendant did object to said motion

on the ground that plaintiff did not make any showing of just cause in support of said motion. Whereupon the Court is of opinion to grant the motion of the plaintiff and permit the non-suit to be set aside and the action reinstated as a matter of right. It is therefore further ordered that this action be and the same is hereby reinstated and continued to the next term of this Court, upon the payment of the Court costs and statute fee by the plaintiff. * * *"

Code, 56-8-12, provides: "Any court may, on motion, reinstate on the trial docket of the court any case dismissed, and set aside any nonsuit that may be entered by reason of the nonappearance of the plaintiff, within three terms after the order of dismissal shall have been made, or order of nonsuit entered; but any such order of reinstatement shall not be entered until the accrued costs in such case shall have been paid." In discussing this Section, in *Higgs* v. *Cunningham,* 71 W. Va. 674, 77 S. E. 273, this Court said: "* * * It would seem that the real purpose of this statute is to allow re-instatement within three terms. For, inherently the court had the power before this enactment to set aside a dismissal or non-suit and re-instate the cause within the term at which the dismissal or nonsuit was entered. This statute does not dispense with the showing of good cause—the showing of excuse for the neglect that has disturbed orderly legal procedure. One can not refuse to prosecute or defend and then ask to do so without showing why he thus acts so inconsistently. * * *" The right of a plaintiff to take a voluntary nonsuit comes from the common law and is not statutory. Code, 56-6-25, only places a limitation upon that right and reads as follows: "A party shall not be allowed to suffer a nonsuit, unless he do so before the jury retire from the bar." Upon this question, an article in 27 W. Va. Law Quarterly, Page 20, titled "The History and Development of Nonsuit", is of interest.

We think the question here raised is controlled by the decisions of this Court in *State ex rel. The Wilkes Ins. Agency* v. *Damron, Judge,* 85 W. Va. 619, 102 S. E. 238; and

*Thomas* v. *Jones*, 105 W. Va. 46, 141 S. E. 434. The 2nd syllabus point in the *Damron* case reads as follows: "In determining whether or not there is any merit in plaintiff's motion, the court may consider the evidence heard on the trial just prior to its judgment of nonsuit." The 1st point of the syllabus in the *Jones* case reads as follows: "In setting aside a non-suit and reinstating the case upon the trial docket under chap. 127, sec. 11, Code, the trial court may consider the evidence given up to the time of the non-suit, and his rulings in the case, for ascertaining good cause for granting the motion to set aside and reinstate, and his action in so doing will not be disturbed by the appellate court unless it is shown that his discretion in that regard has been abused."

The provision in the court's final order in the instant case that: "* * * Whereupon the court is of opinion to grant the motion of the plaintiff and permit the non-suit to be set aside and the action reinstated as a *matter of right.*" (Italics Supplied.), is, of course, erroneous. However, we consider it surplusage, and in the absence of a showing that there was an abuse of discretion on the part of the trial court in granting the motion to reinstate the action, we cannot say that reversible error was committed.

For reasons herein stated, it was reversible error for the trial court to deny the defendant's motion, made at the end of all of the evidence, to take the case from the jury and direct it to return a verdict for the defendant. It was likewise reversible error to deny the motion of the defendant to set aside the verdict and grant the defendant a new trial. The judgment of the Circuit Court of Wayne County is reversed, the verdict of the jury is set aside, and the defendant will be awarded a new trial.

> *Reversed; verdict set aside;*
> *new trial awarded.*

BROWNING, JUDGE, dissenting:

I respectfully dissent from the decision of the Court in this case upon the ground that the evidence was such that it presented a factual question to be determined by a jury

whether the plaintiff's decedent was guilty of contributory negligence.

It is perhaps the most fundamental principle of our system of jurisprudence that questions of fact are to be determined by a jury, and questions of law by a court. It is true also that a court will not hesitate to set aside a verdict of a jury where there is no evidence to support it, or where it is against the plain preponderance of conflicting evidence. Also, this Court has said, as has many others, that where the governing facts are not disputed and are such that reasonable minds can draw but one conclusion from them, the questions of primary and contributory negligence are for judicial determination as matters of law. *Wood, Executor* v. *Shrewsbury,* 117 W. Va. 569, 186 S. E. 294. It is my opinion that, upon the facts in this case, reasonable minds could draw more than one conclusion from them, particularly since it is well established that a jury has the right to draw reasonable inferences from the facts which are developed before it during the trial. In *Bowers* v. *Brannon,* 141 W. Va. 435, 90 S. E. 2d. 342, this Court said: "* * * However, a decision as to where the province of a jury ends, and that of a court begins, upon questions of fact, must be determined by the evidence in each case. Many well established principles are helpful. If there is no evidence to support the verdict of a jury, or if it is against the plain preponderance of conflicting evidence, it must be set aside. If reasonable men cannot disagree upon the facts, a matter of law arises for the court, but learned judges sometimes do not agree as to whether the facts in a particular case are such that reasonable men could reach only one conclusion therefrom. There is no rule or principle of law that can serve as a definite guide post to point the way to a specific line of demarcation in this nebulous realm where the rights, duties and responsibilities of a court and jury meet. * * *" This Court has also stated that when a litigant comes to it with a verdict of a jury, approved by the trial court by entering judgment thereon, he is in the strongest position known to the law.

In this case, the Court has held as a matter of law that the plaintiff's decedent was guilty of contributory negligence, by remaining in the automobile of the defendant, because of two things: the drinking of beer by the driver and the excessive speed at which the car was driven during the evening. This record does not disclose the amount of alcohol that is contained in a bottle of beer, which the Legislature of this State has designated as "non-intoxicating", although it may be conceded, as this Court has said, that the Legislature cannot make a beverage non-intoxicating by so stating in a statute. The defendant testified flatly to the effect that he was "not intoxicated", but that he "felt" the effects of the beverage which he had consumed. In this regard, I think it is worthy of noting that no witness except the defendant testified as to the drinking of beer on that evening by the defendant, or as to his condition with regard to intoxication either before or after the accident who did not state that the defendant and the deceased were sober. One witness so testified who observed these two young men shortly before the fatal wrecking of the automobile. The defendant testified that he ate his supper and met the deceased at about 7:30 P. M. on this particular evening, and that they left the Town of Wayne together at about 8:30 P. M. The distance from Wayne to Zip's place, where the defendant and the deceased purchased three bottles of beer each which they later drank in their automobile on the way to Huntington, is "4 or 5 miles." The witness Jackie Smith testified that the accident occurred "just after midnight". The witness Ernest Smith testified that the accident occurred "about 15 or 20 minutes after" midnight. This evidence is undisputed. During the evening, at a time which is not fixed, each of these young men drank a bottle of beer and ate a hamburger sandwich at a restaurant in the City of Huntington. The only thing they drank thereafter, except a bottle of beer that was drunk within minutes prior to the accident, was a bottle of coca-cola each at another place at which they stopped. There is no evidence in this record, not even by the defendant himself, that his driving was affected in any

way by the beer which he drank, and I think the jury could have reasonably inferred that the beer, which the defendant drank during a period of approximately three and a half to four hours before the accident occurred, would not have affected his driving at the time of the wreck.

In *Darling* v. *Browning, et al.,* 120 W. Va. 666, 200 S. E. 737, Judge Maxwell, in referring to *Adams* v. *Hutchinson,* 113 W. Va. 217, 167 S. E. 135, stated that: "there was much drinking of intoxicating liquor." It will also be noted from a casual reading of the facts in *Hurt, Executor* v. *Gwinn,* 142 W. Va. 259, 95 S. E. 2d. 248, that there was much more drinking of hard liquor than there was in the *Adams* case.

It was a question for the jury whether the defendant, because of the beer which he had consumed, suddenly raced down Bloss Hill toward Dickson Crossing at a speed of 70 miles an hour when he refused to categorically state in his testimony that he had ever driven at that rate of speed with the deceased in his automobile prior to that time.

Jurors, in determining the weight of evidence and the credibility of witnesses, may take into account their common general knowledge and experience as men in the ordinary affairs of life. *Head* v. *Hargrave,* 105 U. S. 45, 26 L. Ed. 1028. Mr. Justice Field, in the *Head* case, *supra,* stated: "While they [jurors] cannot act in any case upon particular facts material to its disposition resting in their private knowledge, but should be governed by the evidence adduced, they may, and to act intelligently they must, judge of the weight and force of that evidence by their own general knowledge of the subject of inquiry." In order to support the conclusion of the majority that the plaintiff's decedent was contributorily negligent as a matter of law, the Court must infer from the evidence that the defendant drove at excessive speeds, at hazardous places, after consuming a sufficient amount of beer to feel the effects thereof, and that plaintiff's decedent voluntarily remained in the

automobile under those circumstances. This, I submit, in the instant case, constitutes an invasion of the province of the jury. An inference is nothing more than a permissible deduction from the evidence. *Cogdell v. Wilmington & W. R. Co.*, 132 N. C. 852, 44 S. E. 618. That a fact is true does not alone support an inference that a party has knowledge thereof; an inference being a deduction to be drawn from facts proved, not a conclusion based on suspicion alone. *People v. Peloian,* 95 Cal. App. 96, 272 P. 304.

On direct examination, these questions were asked the defendant and he made these answers: Q: "Now, Donald, what is the general character of the road *over those travels* [sic] from here into Huntington on Route 52 and on Route 75 and also on Route 60 from Huntington down to Catlettsburg? How would you describe the road generally over that area?", A: "Well, it is fairly curvy."; Q: "Does it or does it not cover hilly or semi-mountainous country?", A: "There are a few hills."; Q: "Now Donald, at the time of the accident why were you driving that fast and during the evening before?", A: "Sometimes you just want to drive fast.", Court: "I can't hear you.", A: "Just wanted to drive fast." The defendant also testified that "at various times" that evening he "judged" he drove his automobile at a rate of speed of 65 miles an hour, and that the decedent was sitting in the front seat with him. The defendant does not say at what places on the journey that he "judged" he drove at a speed of 65 miles an hour. He does not state that he drove at such speed on the "curvy" or "hilly" roads. Of course, the jury, being residents of Wayne County, knew that Route 60 between Huntington and Catlettsburg, Kentucky, where a substantial part of the driving was done that evening, traverses no hills and is a major east-west highway through this State. Perhaps those were facts "resting in their private knowledge" which they could not, or at least should not, have considered in weighing the evidence. Nevertheless, the jury could have reasonably inferred, and from their

verdict it must be assumed that they did so infer, that the operation of the automobile at excessive speed did not occur on the "hilly" portion of the journey.

Upon cross-examination these questions were asked the defendant, and he made these answers: Q: "Did you observe your speedometer much that evening?", A: "Not too often."; Q: "Well, how can you tell how fast you were going?", A: "At which time?"; Q: "Well, your top— You stated before your top speed that evening before you came to the scene of the accident was sixty-five. How do you know that would be a fact?", A: "Well, I am accustomed to driving and I just judged—."; Q: "Did you just estimate that?", Mr. Jenkins: "Let him finish his answer. Go ahead and finish your answer.", A: "I judged my speed was about that from previous driving."; Q: "That is just an estimate on your part, isn't it?", A: "That is an estimate."; Q: And it is an estimate that on the way to Huntington you were driving fifty when you crossed the dip, is that not true?", A: "That's right."

There is no evidence that the deceased knew that the automobile in which he was a passenger was travelling at an excessive speed at any time during the evening. The defendant testified to no incident that occurred prior to the wrecking of his automobile on the crossing that would indicate to the deceased that he was in danger. On the contrary, the defendant stated that he obeyed all traffic regulations, such as stopping at signal lights, with the exception, of course, of judging that he drove at various times at a rate of speed as high as 65 miles an hour. It is my opinion that the evidence in this case presented a factual question for jury determination as to whether the deceased was guilty of contributory negligence. Therefore, I would affirm the judgment of the Circuit Court of Wayne County.