Ruth Ann Barker, as *Administratrix* of the
Estate of William David Barker

*v.*

Kathleen M. Hawkins, as *Administratrix*
of the Estate of Tracey Lee Hawkins

(No. 12838)

Submitted February 17, 1970.      Decided March 17, 1970.

*Steptoe & Johnson, Willis O. Shay,* for appellant.

*Wilson, Frame & Rowe, Clark B. Frame, Maruka & Sansalone, Frank Sansalone,* for appellee.

Browning, President:

This action arose out of a one-car accident in which the driver, Hawkins (defendant's decedent), and a passenger, Barker (plaintiff's decedent) were killed. These two and three other passengers were all in the Navy and were on their way home from Norfolk, Virginia, to the Fairmont, West Virginia, area on leave for the weekend. They

first stopped at a restaurant outside Winchester, Virginia, where they ate and purchased "three six-packs to a case" of beer.

"Five or ten miles" west of Winchester, Hawkins began "driving kind of fast, taking turns real fast, and he was going off the road now and then when he shouldn't have." A minor accident occurred between the Hawkins vehicle and one owned by a Francis J. Lewis on Route 50 about 25 miles from Romney. Hawkins did not stop but continued to travel on at excessive speeds. He was overtaken about five miles from the scene of the accident by Lewis. The entire group then proceeded to drive approximately nineteen miles to the State Police Headquarters in Romney to report the accident. Witnesses testified at the trial that during all of this Hawkins was sober. After filling out the appropriate accident forms, Hawkins and his passengers continued their trip. About two or three miles out of Romney, Hawkins again "started driving fast." Two of the passengers, Davis and Foco, protested Hawkins' manner of driving, apparently to no avail. Some twenty miles west of Romney, the fatal accident occurred. Seven of the original eighteen to twenty-four cans of beer were found unopened. At some time a blood alcohol sample was obtained from both deceased parties, and Hawkins' blood was found to contain 17/100ths of one per cent alcohol.

At the close of plaintiff's evidence, defendant moved for a directed verdct on the ground of assumption of risk. This motion and one made at the end of defendant's evidence were overruled. The jury returned a verdict in favor of plaintiff in the amount of $12,293.00. On July 17, 1968, the defendant moved to set aside, which motion was overruled by a final order of the Circuit Court of Marion County entered August 30, 1968. It is from this final order that the defendant appeals.

The defendant assigns as error the court's refusal to direct a verdict on the basis of assumption of risk and failure to allow a thorough showing of the facts surrounding the first accident which defendant alleges prevented

the jury from evalating in its entirety the defense of assumption of risk.

There is little, if any, material conflict in the testimony in this case. In *Bower* v. *Brannon,* 141 W. Va. 435, 90 S. E.2d 342, this Court said: "If there is no evidence to support the verdict of a jury, or if it is against the plain preponderance of conflicting evidence, it must be set aside. If reasonable men cannot disagree upon the facts, a matter of law arises for the court. . . ." That principle has of course been stated in many of the decisions of this Court. A jury has passed upon the evidence in this case and an able and experienced trial judge has entered judgment upon that verdict. However, this Court has on several occasions in the type of case which is before us upon this appeal reversed the judgment and set aside the verdict of the jury upon the ground that the guest passenger in a motor vehicle had "assumed the risk" or was guilty of "contributory negligence," those principles apparently being applied interchangeably in most of these cases.

This case is easily distinguishable from *Hurt* v. *Gwinn,* 142 W. Va. 259, 95 S. E.2d 248; *Young* v. *Wheby,* 126 W. Va. 741, 30 S. E.2d 6 and *Adams* v. *Hutchinson,* 113 W. Va. 217, 167 S. E. 135. In each of those cases there was "much drinking" of strong alcoholic beverages. In *Korzun* v. *Shahan,* 151 W. Va. 243, 151 S. E.2d 287, this statement was made with regard to those cases: "[T]he guest passenger became a co-adventurer with the driver. . . ." In that case there was no drinking of alcoholic beverages and no reckless driving of the vehicle until a short time before the wreck and injury to the passenger occurred and there was no opportunity after the reckless driving began for the guest passenger to leave the vehicle. This statement is contained in the opinion: "In order to find a guest passenger, who was injured as the result of the driver's negligence, guilty of contributory negligence as a matter of law the evidence of his negligence or his failure to exercise due care for his own safety must be of such magnitude that no doubt on this matter exists to be submitted to a jury." In *Kelly* v. *Checker White Cab,*

*Inc.,* 131 W. Va. 816, 50 S. E.2d 888, this Court held as a matter of law that the conduct of the guest passenger "in remaining in the automobile be characterized as contributory negligence or assumption of risk," relying primarily upon the *Young* case. In the recent case of *Kendall* v. *Allen,* 148 W. Va. 666, 137 S. E.2d 250, the female plaintiff was injured about five o'clock in the morning after some drinking of alcoholic beverages which began shortly after 1:15 a.m. The defendant driver and the plaintiff guest passenger, accompanied also by the co-defendant Brown, the owner of the car, were in the car when it swerved off the road causing the injuries to the plaintiff. The trial court directed a verdict for the defendants, but this Court reversed that judgment, and this is the fifth syllabus point of that case:

> The questions of negligence, contributory negligence, assumption of risk and proximate cause are questions of fact for the jury where the evidence is conflicting or where the facts, though undisputed, are such that reasonable men may draw different conclusions therefrom.

Of course, all such cases must be determined upon the facts in the particular case. In *Hutchinson* v. *Mitchell,* 143 W. Va. 280, 101 S. E.2d 73, this Court reversed a judgment of the trial court upon a verdict for the plaintiff, a guest passenger, and held as a matter of law that upon the facts in that case the guest passenger was "guilty of contributory negligence." The evidence showed that the driver and the guest passenger, both young men of about the same age, spent several hours driving between Wayne and Huntington, West Virginia, and Catlettsburg, Kentucky, stopping on several occasions to drink beer. Unlike the driver in this case, the defendant in that case was not killed and became a material witness in his own defense. He stated that he had driven up to sixty-five miles an hour which was beyond the speed limit and that at the time of the wreck "his speed was 70 to 75 miles an hour." He stated that "he could feel the effects of the beer, but was not intoxicated."

Of the five passengers in the car at the time of the fatal accident in this case, three were killed and only one survivor, David Lee Davis, testified. Davis stated that when the party stopped for lunch just west of Winchester, Virginia, Hawkins had his lunch and drank one bottle of beer. On cross-examination, this witness was asked two questions, although not consecutively, and made these answers:

> Q. How much did the driver, Tracy Hawkins, have to drink between Winchester and Romney?
>
> A. I couldn't say.
>
> * * *
>
> Q. How many beers did Tracy Lee Hawkins have to drink between Winchester and Romney?
>
> A. Two or three.

He further stated that Hawkins had one beer "between Romney and the point of the accident." When asked how many beers Hawkins had all together, his answer was, "Four that I am positive of, and he could have had a couple more." This witness was also asked upon cross-examination if before the minor accident near Capon Bridge, Hawkins had driven at very high speeds "dropping off on the berm occasionally." The witness answered, "This happened three or four times." He had previously responded that Hawkins' driving "wasn't too dangerous. We weren't sliding real bad; we would make a small skid around a turn." Both this witness and Lewis stated that there was no reckless driving or drinking between the point where the car was stopped after the minor accident and Romney. Hawkins spent about twenty minutes in the office of the State Police Detachment at that place and Trooper Lannan, who was in charge, was asked this question and made this answer:

> Q. Was he drunk, or sober, Trooper?
>
> A. He was sober.

Lewis was asked if Hawkins was intoxicated and his answer was, "No, sir." The only evidence of drinking by Hawkins after leaving Romney was the testimony of Davis that he drank "one beer," but the witness did not know whether that was the extent of his drinking as he "rolled up" in the back seat after futilely protesting the reckless driving of Hawkins and knew nothing until four days later when he awoke in a hospital.

Upon a very careful consideration of the evidence in this case, it is the view of this Court that factual questions for jury determination were presented and we will not disturb the verdict of the jury or the judgment entered thereon. It is evident from the testimony in this case that the deceased who was driving, Hawkins, was guilty of primary negligence and that question is not contested by counsel. If the plaintiff's case is to fall because of contributory negligence of Barker, it is elementary that that negligence must have "contributed proximately" to his death. Where the evidence warrants, questions of negligence, contributory negligence and assumption of risk are for a jury. This is the first syllabus point of *State v. Winans,* 100 W. Va. 418, 130 S. E. 607:

> If a new trial depends upon the weight of testimony or inferences from it, the jury are exclusively and almost uncontrollably the judges.

We were concerned with the second assignment of error relative to the refusal of the trial court to permit the witness Lewis to answer a question in the presence of the jury to the effect that it was necessary to drive at a speed of at least eighty miles an hour in order to overtake the Hawkins' automobile after the minor accident. However, the court did permit these questions to be asked of the plaintiff's witness Davis upon cross-examination:

Q. After you had this earlier accident, you didn't stop then, did you?

A. No, we didn't.

Q. In fact, the car was driven at rather high speeds after that before you ultimately stopped, wasn't it?

A. Yes.

Q. Did you complain about that?

A. No, I didn't.

Q. And the fact is the speeds reached very high speeds at times, didn't they?

A. Yes.

Assuming that it was error not to permit Lewis to testify as aforesaid, we believe the error was cured by the testimony of this witness which was, in substance, the same as the testimony of Lewis would have been had he been permitted to answer.

The judgment of the Circuit Court of Marion County is affirmed.

*Affirmed.*